No. 105,458

In the Matter of MICHAEL E. FOSTER, *Respondent*.

(258 P.3d 375)

Opinion filed August 19, 2011.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*Lee H. Woodard*, of Wichita, argued the cause, and *Michael E. Foster*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Michael E. Foster, of Wichita, an attorney admitted to the practice of law in Kansas in 1973.

On August 12, 2010, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). A joint stipulation was entered into on September 12, 2010. A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on November 23, 2010, where the respondent was present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.1 (2010 Kan. Ct. R. Annot. 406) (competence); 1.3 (2010 Kan. Ct. R. Annot. 422) (diligence); 1.4(a) (2010 Kan. Ct. R. Annot. 441) (communication); and 3.2 (2010 Kan. Ct. R. Annot. 539) (expediting litigation). Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

### "FINDINGS OF FACT

. . . .

"2. In 1991, Laymott Wilmott retained the Respondent to probate his sister's estate. Mary Jane Wilmott, Laymott Wilmott's sister, died intestate with no surviving spouse or children. Ms. Wilmott's heirs were her four adult siblings.

"3. The Respondent commenced the estate proceedings and on July 10, 1991, the court appointed Mr. Wilmott as the administrator of the estate. On August

19, 1991, the Respondent filed an inventory and valuation. In November, 1991, the court entered an order approving the sale of the real property.

"4. In November, 1992, the Respondent filed an application with the court for a partial distribution of $20,000 for each heir. The court approved the partial distribution in February, 1994.

"5. The sale of the real estate was completed in late 1991, however, the Respondent failed to prepare and present an order memorializing the sale to the court until February, 1994. The Respondent took no further action to distribute the assets of the estate to the heirs or otherwise complete the representation.

"6. On May 4, 1999, Mr. Wilmott died. The Respondent took no action to secure the appointment of a new administrator of the estate. Then, two other original heirs also passed away.

"7. In May, 2005, at the request of the only surviving original heir, Louis Wilmott, Delaine Bean, Ms. Wilmott's nephew, began investigating why the estate remained open. Mr. Bean retained new counsel, Karl Hesse, to assist him.

"8. Mr. Bean and Mr. Hesse discovered that no federal or state income tax returns had been filed on behalf of the estate between 1994 and 2005. Mr. Bean and Mr. Hesse eventually filed all the required tax returns for the estate, paid the outstanding tax liability, and paid interest and penalties on the outstanding tax liability.

"9. Mr. Bean and Mr. Hesse also learned that the Respondent periodically received royalty checks from oil and mineral interests owned by Ms. Wilmott. The Respondent placed the checks in a file and took no further action regarding the checks. After Mr. Bean and Mr. Hesse discovered the checks, they attempted to deposit the checks. They were unable to collect all the proceeds of the checks due to the passage of time.

"10. Mr. Bean and Mr. Hesse worked for two and one half years to determine the extent of the injury cause by the Respondent's lack of diligence. Mr. Bean spent more than 1400 hours on Ms. Wilmott's estate. The Respondent's actions cost Ms. Wilmott's estate $44,659.56.

"11. Mr. Hesse made a demand on the Respondent's malpractice carrier. The carrier denied coverage because the Respondent had not notified the company of the potential claims during various renewal years. Eventually, the Respondent paid $7,000 to settle the claim by the estate.

## "CONCLUSIONS OF LAW

"1. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 3.2, as detailed below.

"2. Lawyers must provide competent representation to their clients. KRPC 1.1. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' The Respondent did not represent the estate of Ms. Wilmott with sufficient thoroughness or preparation.

Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.1.

"3. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent's lack of diligence in this case is remarkable. From 1994 forward, he failed to take any steps to further representation of the estate. The Respondent failed to liquidate the assets of the estate. The Respondent failed to seek the distribution of the assets of the estate to the heirs. The Respondent failed to seek the appointment of an administrator following Mr. Wilmott's death. He failed to file the necessary tax returns. Finally, the Respondent failed to deposit the oil and mineral royalty checks into the estate bank account. The Hearing Panel, therefore, concludes that the Respondent failed to act with reasonable diligence and promptness in representing Ms. Wilmott's estate, in violation of KRPC 1.3.

"4. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he failed to inform Ms. Wilmott's heirs that the estate continued to receive royalty checks. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"5. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. Ms. Wilmott's estate languished for more than 11 years because of the Respondent's failure to expedite the case. During that time, 3 of the 4 heirs died and $44,659.56 was either lost or incurred as an additional expense. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

## "AMERICAN BAR ASSOCIATION
## "STANDARDS FOR IMPOSING LAWYER SANCTIONS

"In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"*Duty Violated.* The Respondent violated his duty to his client to provide competent and diligent representation and adequate communication.

"*Mental State.* The Respondent knowingly violated his duty.

"*Injury.* As a result of the Respondent's misconduct, the Respondent caused actual serious injury to his client. The Respondent's misconduct cost the estate the net amount of $37,659.56.

"*Aggravating or Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"*Prior Disciplinary Offenses.* On August 31, 2004, the Respondent entered into the Attorney Diversion Program for having violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 3.2. The Respondent successfully completed the terms and conditions of the diversion agreement. Thereafter, the complaint that gave rise to the diversion agreement was dismissed.

"*A Pattern of Misconduct.* The Respondent failed to diligently represent his client for a period of 11 years which amounts to a serious pattern of misconduct.

*Multiple Offenses.* The Respondent violated KRPC 1.1, KRPC 1.3, KRPC 1.4, and KRPC 3.2. As such, the Hearing Panel concludes that the Respondent committed multiple offenses.

"*Vulnerability of Victim.* The estate of Ms. Wilmott was vulnerable to the Respondent's misconduct.

"*Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in 1973. At the time the misconduct commenced, the Respondent had been practicing law for more than 20 years. The Hearing Panel, therefore, concludes that the Respondent had substantial experience in the practice of law.

"Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"*Absence of a Dishonest or Selfish Motive.* The Respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"*Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent suffers from dysthymia disorder and generalized anxiety disorder. It appears that the dysthymia disorder and generalized anxiety disorder contributed to the Respondent's misconduct in this case.

"*The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent cooperated throughout the disciplinary investigation and hearing.

"*Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The Respondent enjoyed a good reputation among his peers in the Wichita bar, as described in letters received by the Hearing Panel.

"*Remorse.* The Respondent expressed genuine remorse for having engaged in misconduct.

"In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.42   Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

## "RECOMMENDATION

"At the time of the hearing, the Deputy Disciplinary Administrator made no specific recommendation for discipline. Instead, the Deputy Disciplinary Administrator informed the Hearing Panel that she wished to wait until the time of the oral argument before the Kansas Supreme Court to make a recommendation. The Deputy Disciplinary Administrator argued that because the Respondent had not completely put his plan of probation into effect, she was not able to join the Respondent's request that he be placed on probation, subject to the terms and conditions of his proposed plan.

"However, the Deputy Disciplinary Administrator stated that she wished to consider her recommendation after receiving the Respondent's affidavit required by Kan. Sup. Ct. R. 211(g)(5).

"The Respondent recommended that the Hearing Panel place the Respondent on probation subject to the terms and conditions of his plan. Additionally, the Respondent recommended that the Hearing Panel make certain adjustments to the plan of probation, including adding a provision that would limit the Respondent's practice by prohibiting the Respondent from practicing in the area of probate law.

"Kan. Sup. Ct. R. 211(g) details what is required of a Respondent to be considered for probation:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv) placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"The Respondent properly submitted a timely plan of probation. It appears to be workable, substantial, and detailed. However, the Respondent failed to put the plan of probation into place by complying with each of the terms and conditions of the plan of probation. Accordingly, the Hearing Panel concludes that the Respondent failed to comply with Kan. Sup. Ct. R. 211(g).

"Suspension is warranted in this case. The Respondent's depression appears to continue to impact the Respondent and his ability to practice law. In the opinion of the Hearing Panel, the Respondent should comply with all of the recommendations of the treating professionals.

"It is not the Hearing Panel's intention to end the Respondent's career by recommending a suspension from the practice of law. Therefore, the Hearing Panel unanimously recommends that the Respondent be suspended for a period of six months. However, the Hearing Panel recommends that the Respondent undergo a hearing pursuant to Kan. Sup. Ct. R. 219 prior to reinstatement. A reinstatement hearing is necessary in this case because the Respondent needs to establish that he is in good mental health and fit to resume the practice of law.

"Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Miller*, 290 Kan. 1075, 1084-85, 238 P.3d 227 (2010); *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009); see Supreme Court Rule 211(f) (2010 Kan. Ct. R. Annot. 327). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288 Kan. at 505 (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

In this case, the respondent withdrew his exceptions to the panel's final hearing report. Accordingly, the hearing report's findings and conclusions are deemed admitted. Supreme Court Rule 212(c) (2010 Kan. Ct. R. Annot. 344). The evidence before the

hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the hearing panel's findings and conclusions, except as noted below.

At oral argument before this court, the Disciplinary Administrator's office asked the court to impose a 6-month suspension and require a hearing pursuant to Supreme Court Rule 219 (2010 Kan. Ct. R. Annot. 370) prior to reinstatement as recommended by the hearing panel. The Disciplinary Administrator noted that the proposed probation plan was not received and implemented by the required April 15, 2011, deadline established between the respondent and the Disciplinary Administrator's office. Respondent also missed the December 31, 2010, deadline to provide a case list, finally submitting a case list to the Disciplinary Administrator on May 20, 2011. Further, liability insurance had not been obtained in spite of respondent's assurance that it would be in place at the time of the hearing. Based on respondent's demonstrated inability to meet these conditions, we agree that a 6-month suspension is in the best interest of the respondent and the public. Reinstatement is conditioned upon respondent demonstrating that he has addressed his depressive disorder, establishing that he is in good mental health and fit to resume the practice of law, and complied with the conditions previously agreed upon with the Disciplinary Administrator's office.

## CONCLUSION

IT IS THEREFORE ORDERED that Michael E. Foster be suspended for 6 months from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2010 Kan. Ct. R. Annot. 276).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2010 Kan. Ct. R. Annot. 370), and in the event respondent seeks reinstatement, he shall comply with Supreme Court Rule 219.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.