No. 108,524

In the Matter of ROGER BATT, *Respondent.*

(294 P.3d 241)

Opinion filed January 11, 2013.

*Kimberly L. Knoll,* Deputy Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

No appearance by respondent.

*Per Curiam:* This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Roger Batt, of Wichita, an attorney admitted to the practice of law in Kansas in 1991.

On February 9, 2012, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). A hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on May 15, 2012, where the respondent appeared pro se. The hearing panel determined that respondent violated KRPC 1.3 (2011 Kan. Ct. R. Annot. 433) (diligence); 1.4(a) (2011 Kan. Ct. R. Annot. 452) (communication); 1.16(a)(3) and (d) (2011 Kan. Ct. R. Annot. 535) (termination of representation); 3.2 (2011 Kan. Ct. R. Annot. 552) (expediting litigation); 8.4(d) (2011 Kan. Ct. R. Annot. 618) (engaging in conduct prejudicial to the administration of justice); and Kansas Supreme Court Rule 207(b) (2011 Kan. Ct. R. Annot. 314) (failure to cooperate in disciplinary investigation).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"FINDINGS OF FACT

. . . .

"*DA10397*

"6. [M.B.], an inmate at the Lansing Correctional Facility, retained the Respondent to represent him in relation to his brother's probate case. The administrator of the estate asserted that Mr. [B.] was financially obligated to the estate.

The issue was how the administrator offset the financial obligation against the inheritance Mr. [B.] was entitled to receive from his brother's estate.

"7.   The administrator filed a petition and scheduled a hearing on the petition.

"8.   The Respondent failed to maintain adequate communication with Mr. [B.].

"9.   The Respondent failed to attend the hearing on the petition. The Respondent failed to inform Mr. [B.] of the scheduled hearing. The Court entered judgment against Mr. [B.] for the financial obligation.

"10.   As a result of the Respondent's failure to communicate, Mr. [B.] terminated the Respondent's representation. After Mr. [B.] terminated the Respondent's representation, the Respondent failed to timely withdraw from the representation.

"11.   The Respondent ultimately refunded the full retainer to Mr. [B.].

### "DA11079

"12.   The Respondent was appointed to represent the natural mother in an appeal of the termination of her parental rights to the Kansas Court of Appeals in a case titled *In re D.O., Jr., T.A.O., M.L.P.*, appellate case number 103,755.

"13.   The Court informed the Respondent that the case would be expedited and no extensions of time would be granted. The Respondent failed to file a brief by the deadline.

"14.   The Court extended the time for the Respondent to file the brief. Again, the Respondent failed to file the brief.

"15.   As a result of the Respondent's failure to file a brief, the Court dismissed the appeal and the natural mother lost her opportunity to have the Court of Appeals review the order terminating her parental rights.

### "DA11106

"16.   [J.D.W.] retained the Respondent to represent her in a guardianship case involving her son. Previously, as a result of financial difficulties, Ms. [W.] allowed her mother, [S.K.S.], to care for the child. When Ms. [W.'s] financial difficulties improved she sought to have the child returned to her care but Ms. [S.] refused and filed a guardianship case.

"17.   Ms. [W.] paid the Respondent $1,500 for the representation and the Respondent entered his appearance.

"18.   The Respondent agreed to continue the case, contrary to Ms. [W.'s] wishes. After agreeing to the continuance, Ms. [W.] never heard from the Respondent again.

"19.   On February 22, 2010, Ms. [W.] wrote to the Respondent directing him to withdraw from the representation. The Respondent failed to withdraw from the representation.

"20.   Ms. [W.] hired a subsequent attorney, Stephen M. Turley. Mr. Turley filed an emergency motion. As a result of Mr. Turley's actions, Ms. [W.'s] son was returned to her.

"21. Eventually, the Respondent refunded Ms. [W.'s] entire retainer.

## "DA11187

"22. [J.D.] retained the Respondent to represent her in a post-divorce child custody matter. Ms. [D.] paid the Respondent $2,500.00 for the representation.

"23. The Respondent informed Ms. [D.] that the summer of 2009 was the best opportunity for Ms. [D.] to attempt to gain residential custody of three of her children. The Respondent filed a motion in behalf of Ms. [D.] for a change of custody.

"24. Ms. [D.] repeatedly attempted to contact the Respondent by telephone. Ms. [D.] left many messages for the Respondent on the Respondent's answering machine and the Respondent's voice mail. The Respondent failed to return Ms. [D.'s] telephone calls.

"25. After the Respondent filed the motion, the Respondent did not have any additional contact with Ms. [D.] or the Court.

"26. Ms. [D.] requested that the Respondent return the unearned attorney fees. The Respondent failed to return the unearned fees. Ms. [D.] contacted the fee dispute committee for assistance. The fee dispute committee contacted the Respondent in an attempt to address Ms. [D.'s] grievance. The Respondent failed to respond to the fee dispute committee.

"27. Eventually, Ms. [D.] filed a small claims action against the Respondent. On the day of trial, the Respondent appeared and refunded the entire attorney fee plus interest. As a result, Ms. [D.] dismissed the small claims action.

"28. Ms. [D.], however, lost the opportunity to attempt to regain custody of three of her children.

## "DA11265

"29. In a child in need of care case, the Respondent entered his appearance in behalf of the natural mother. The natural mother's parental rights were terminated and the Respondent filed a timely notice of appeal, in *In re L.Z.M.T.*, appellate case number 105,153.

"30. The Respondent filed a request for a transcript. However, the Respondent's request was misdirected for some period of time. At the same time, the Kansas Court of Appeals issued an order expediting the appeal.

"31. The Respondent failed to timely file the brief in behalf of his client. Due to the misdirection of the transcript request, the Respondent did not have a copy of the transcript. The Respondent failed to file a request with the Court to grant an extension of time to allow him to obtain a copy of the transcript.

"32. Despite the Respondent's failure to request an extension of time, the Court set a new deadline for the Respondent's brief. The new deadline was during the holiday season. The Respondent did not learn of the new deadline because he did not open his mail during the holiday season. The Respondent failed to file the brief by the new deadline. As a result, the Court dismissed the appeal.

"33. Later, the Respondent filed a motion to reinstate the appeal. The Court granted the motion, the Respondent filed a brief, and the Court has issued its opinion in this case.

*"DA11414*

"34.  In December, 2009, [D.R.], a disabled individual, retained the Respondent to file a bankruptcy case. The Respondent did some work on Mr. [R.'s] bankruptcy case. However, the Respondent failed to timely file the bankruptcy case. As of August 2011, the Respondent had not filed the bankruptcy case in behalf of Mr. [R].

"35.  Mr. [R.] repeatedly tried to contact the Respondent. The Respondent did not return Mr. [R.'s] telephone calls.

"36.  On August 2, 2011, Mr. [R.] filed a complaint with the Disciplinary Administrator's office. The Respondent failed to timely cooperate during the disciplinary investigation.

"37.  Eventually, the Respondent refunded Mr. [R.'s] attorneys fees.

*"DA11471*

"38.  The Respondent was appointed to represent the natural mother in an appeal of the termination of her parental rights to the Kansas Court of Appeals in a case titled *In re J.T.R. and J.M.R.*, appellate case number 106,863.

"39.  The natural mother requested that the Respondent withdraw from the representation based upon communication issues. The Court issued an order to show cause why the Respondent should not be replaced as counsel. The Respondent failed to respond to the Court and the Court removed the Respondent as counsel of record.

"40.  The Respondent's registration address was a post office box. Without providing a new address to the Clerk of the Appellate Courts, the Respondent closed the post office box. As a result, mailings from the Clerk of the Appellate Courts were returned. Eventually, on December 15, 2011, the Respondent changed his address.

*"Attorney Diversion Program*

"41.  On March 19, 2009, Ms. [K.] wrote to the Respondent, informing him that the Review Committee concluded that the Respondent should be informally admonished or, as an alternative, could participate in the attorney diversion program regarding case DA10397.

"42.  On August 20, 2009, Ms. [K.] forwarded the proposed diversion agreement to the Respondent. The Respondent did not sign and return the diversion agreement.

"43.  On December 3, 2009, Ms. [K.] wrote to the Respondent, enclosing a second copy of the diversion agreement. Ms. [K.] provided the Respondent with an additional week to execute the diversion agreement. Again, the Respondent did not sign and return the diversion agreement.

"44.  On December 23, 2009, Ms. [K.] wrote to the Respondent again, noting his failure to respond to an offer to resolve the case by informal admonition. Ms. [K.] informed the Respondent that based upon his failure to respond, the matter

would proceed to hearing unless he responded by January 8, 2010. The Respondent did not respond by January 8, 2010.

"45. In April, 2010, the second disciplinary complaint, DA11079, was filed against the Respondent.

"46. On April 7, 2010, Ms. [K.] wrote to the Respondent again, informing him that she scheduled an informal admonition in DA10397 for May 5, 2010. The Respondent did not appear for the informal admonition on May 5, 2010.

"47. On May 6, 2010, Ms. [K.] wrote to the Respondent, asking him to contact her to discuss how the case would proceed.

"48. Three additional disciplinary cases were filed with the Disciplinary Administrator, against the Respondent, cases numbered DA11106, DA11187, and DA11265.

"49. On May 4, 2011, Ms. [K.] wrote to the Respondent again. Ms. [K.] renewed the Review Committee's offer to allow the Respondent to participate in the attorney diversion program.

"50. On May 20, 2011, the Respondent wrote to Ms. [K.], expressing interest in applying for the attorney diversion program. On June 14, 2011, the Respondent and Ms. [K.] executed a diversion agreement.

"51. The Respondent failed to comply with the terms and conditions of the diversion agreement. Additionally, two more disciplinary complaints were filed against the Respondent. The Review Committee revoked the Respondent's diversion agreement and traditional disciplinary proceedings resumed.

## "CONCLUSIONS OF LAW

"52. Based upon the findings of fact, the Hearing Panel concludes as a matter of law that the Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16, KRPC 3.2, KRPC 8.4, and Kan. Sup. Ct. R. 207, as detailed below.

"53. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. The Respondent failed to diligently and promptly represent his clients in this case. The Respondent failed to provide diligent representation to Mr. [B.], the natural mothers in the three appellate cases, Ms. [W.], Ms. [D.], and Mr. [R.]. The Respondent repeatedly failed to do what he was appointed or retained to do—represent his clients in their pending cases. As a result of the Respondent's lack of diligence, appellate cases were dismissed, cases were delayed, opportunities were lost, and financial troubles continued. Because the Respondent repeatedly failed to act with reasonable diligence and promptness in representing his clients, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.3.

"54. KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' In this case, the Respondent violated KRPC 1.4(a) when he repeatedly failed to return his clients' telephone calls and when he failed to provide his clients with pertinent information regarding their cases. The Respondent failed to adequately communicate with Mr. [B.], Ms. [W.], Ms. [D.], and Mr. [R.].

Accordingly, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 1.4(a).

"55. KRPC 1.16(a) requires that attorneys withdraw from the representation of clients in certain situations. Specifically, KRPC 1.16(a)(3) requires that attorneys withdraw from the representation of a client if the client discharges the attorney. In this case, Mr. [B.] terminated the Respondent's representation and the Respondent failed to withdraw. Additionally, Ms. [W.] wrote to the Respondent directing him to withdraw from his representation. The Respondent failed to do so. Finally, in appellate case number 106,863, the Respondent's client directed him to withdraw from the representation. Again, the Respondent failed to withdraw from the representation. Thus, the Hearing Panel concludes that the Respondent violated KRPC 1.16(a)(3) on three occasions.

"56. KRPC 1.16 also requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

> 'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

Ms. [D.] directed the Respondent to refund the unearned fees. The Respondent did not respond to Ms. [D.'s] direction. Ms. [D.] sought the assistance of the fee dispute committee. The Respondent ignored the fee dispute committee's contacts. Ms. [D.] was forced to file a small claims action before the Respondent refunded the unearned fees. The Respondent violated KRPC 1.16(d) when he failed to timely refund the unearned fees. The Hearing Panel concludes that the Respondent violated KRPC 1.16(d).

"57. An attorney violates KRPC 3.2 if he fails to make reasonable efforts to expedite litigation consistent with the interests of his client. The Respondent's conduct caused extreme delay in cases in District Court and the Kansas Court of Appeals. The Respondent failed to expedite litigation consistent with the interests of his clients in six cases. Accordingly, the Hearing Panel concludes that the Respondent repeatedly violated KRPC 3.2.

"58. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). In this case, the Respondent engaged in 'conduct that is prejudicial to the administration of justice' when he failed to file briefs in two of the appellate cases and when he failed to respond to the Kansas Court of Appeals order to show cause in the third appellate case. As such, the Hearing Panel concludes that the Respondent violated KRPC 8.4(d) in three cases.

"59. Lawyers must cooperate in disciplinary investigations. Kan. Sup. Ct. R. 207(b) provides the requirement in this regard.

'It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

The Respondent knew that he was required to forward a written response to the initial complaint—he had been instructed to do so in writing by the Disciplinary Administrator and by the attorney investigator. Because the Respondent knowingly failed to provide a written response to the initial complaint filed by Mr. [R.] as requested by the Disciplinary Administrator and the attorney investigator, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b).

"AMERICAN BAR ASSOCIATION
"STANDARDS FOR IMPOSING LAWYER SANCTIONS

"60. In making this recommendation for discipline, the Hearing Panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"61. *Duty Violated*. The Respondent violated his duty to his clients to provide diligent representation and adequate communication. The Respondent also violated his duty to his clients to properly deal with their property. Further, the Respondent violated his duty to the legal system to expedite litigation. Finally, the Respondent violated his duty to the legal profession to cooperate in disciplinary investigations.

"62. *Mental State*. The Respondent knowingly violated his duties.

"63. *Injury*. As a result of the Respondent's misconduct, the Respondent caused actual serious injury to his clients and to the legal system.

"64. *Aggravating or Mitigating Factors*. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following aggravating factors present:

"65. *A Pattern of Misconduct*. Seven complaints were filed against the Respondent. Each of the complaints involved similar misconduct. As such, the Hearing Panel concludes that the Respondent engaged in a pattern of misconduct.

"66. *Multiple Offenses*. The Respondent violated KRPC 1.3, KRPC 1.4, KRPC 1.16(a)(3), KRPC 1.16(d), KRPC 3.2, KRPC 8.4(d), and Kan. Sup. Ct. R. 207. Accordingly, the Hearing Panel concludes that the Respondent committed multiple offenses.

"67. *Vulnerability of Victim.* The Respondent's clients were vulnerable. One was in prison, three were parents whose parental rights had been terminated, one was in dire financial straits, and two were in need of assistance in relation to child custody matters. The Hearing Panel concludes that each of the Respondent's seven clients were vulnerable.

"68. *Substantial Experience in the Practice of Law.* The Kansas Supreme Court admitted the Respondent to the practice of law in the State of Kansas in 1991. The Respondent had substantial experience in the practice of law prior to engaging in the misconduct.

"69. Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the Hearing Panel, in this case, found the following mitigating circumstances present:

"70. *Absence of a Prior Disciplinary Record.* The Respondent has no record of prior discipline.

"71. *Absence of a Dishonest or Selfish Motive.* The Respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"72. *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct.* The Respondent suffers from depression. Additionally, many personal tragedies occurred in the Respondent's personal life during the period of misconduct. The Hearing Panel concludes that the Respondent's personal and [emotional] problems contributed to the violations in this case.

"73. *Timely Good Faith Effort to Make Restitution or to Rectify Consequences of Misconduct.* The Respondent has refunded all unearned fees. The Hearing Panel concludes, however, that the Respondent's efforts to make restitution were not necessarily timely.

"74. *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The Respondent fully and freely acknowledged his wrongdoing. The Respondent's attitude of cooperation is a mitigating factor.

"75. *Remorse.* At the hearing on this matter, the Respondent expressed genuine remorse for engaging in the misconduct.

"76. In addition to the above-cited factors, the Hearing Panel has thoroughly examined and considered the following Standards:

'4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or
(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

## "RECOMMENDATION

"77. The Disciplinary Administrator recommended that the Respondent be indefinitely suspended from the practice of law. The Respondent requested that

his plan of probation be adopted and that he be allowed to close down his office in June 2012, and cease practicing law. During his testimony, Mr. Johnson [Batt's former office partner] suggested that the Respondent be transferred to inactive status.

"78. The Hearing Panel will first address Mr. Johnson's suggestion. When disciplinary complaints are pending, transferring to inactive status does not impact on the completion of a disciplinary case. The Respondent is free to register as an inactive attorney. However, registering as an inactive attorney does not stop or change the outcome of a disciplinary proceeding. The disciplinary proceeding must be completed regardless of whether the Respondent is registered as active or inactive.

"79. No suggestion was made to transfer the Respondent to disabled inactive status. Transferring an attorney to disabled inactive status requires certain proof not presented during the hearing on the formal complaint. *See* Kan. Sup. Ct. R. 220.

"80. The Hearing Panel will next turn its attention to the Respondent's request for probation. Kan. Sup. Ct. R. 211(g) sets forth the procedure for an attorney to be placed on probation. That rules provides:

'(1) If the Respondent intends to request that the Respondent be placed on probation for violating the Kansas Rules of Professional Conduct or the Kansas Supreme Court Rules, the Respondent shall provide each member of the Hearing Panel and the Disciplinary Administrator with a workable, substantial, and detailed plan of probation at least ten days prior to the hearing on the Formal Complaint. The plan of probation must contain adequate safeguards that will protect the public and ensure the Respondent's full compliance with the disciplinary rules and orders of the Supreme Court.

'(2) If the Respondent provides each member of the Hearing Panel and the Disciplinary Administrator with a plan of probation, the Respondent shall immediately and prior to the hearing on the Formal Complaint put the plan of probation into effect by complying with each of the terms and conditions of the probation plan.

'(3) The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i) the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least ten days prior to the hearing on the Formal Complaint;

(ii) the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii) the misconduct can be corrected by probation; and

(iv)   placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"81.   Unfortunately, probation is not appropriate in this case. First, the Respondent failed to develop a workable, substantial, and detailed plan of probation. Second, the Respondent failed to put the proposed plan of probation into effect prior to the hearing on the formal complaint. Next, the Respondent's misconduct cannot be corrected by probation. Finally, placing the Respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas.

"82.   In determining what sanction to recommend to the Kansas Supreme Court, the Hearing Panel is persuaded by language found in the commentary following ABA Standard 4.42.

'Suspension should be imposed when a lawyer knows that he is not performing the services requested by the client, but does nothing to remedy the situation, or when a lawyer engages in a pattern of neglect, with the result that the lawyer causes injury or potential injury to a client.'

"83.   The Respondent knew that he was not performing the services requested by his client and required for adequate representation. The Respondent did nothing to remedy the situation. Additionally, the Respondent engaged in a pattern of neglect which resulted in serious injury to his clients.

"84.   The Hearing Panel concludes that the Respondent is not in a position to continue with the practice of law at this time. Thus, based upon the findings of fact, conclusions of law, and the Standards listed above, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law for an indefinite period of time. At the reinstatement hearing, the Respondent should establish what steps he has taken to ensure that his mental health issues have been fully addressed and that the Respondent is currently fit to return to the practice of law.

"85.   Costs are assessed against the Respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2011 Kan. Ct. R. Annot. 334). Clear and convincing evidence is " 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable." ' " *In re Lober*, 288

Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of both the hearing before the panel and the hearing before this court. He filed no exceptions to the panel's final hearing report. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2011 Kan. Ct. R. Annot. 352).

The evidence before the hearing panel establishes the charged misconduct of the respondent by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's conclusions.

The only issue before us is the appropriate discipline. The hearing panel recommended that respondent be indefinitely suspended from the practice of law and that he undergo a reinstatement hearing prior to reinstatement. At the hearing before this court, the respondent did not appear. Due to this failure, the office of the Disciplinary Administrator recommended that respondent be disbarred. We agree the failure to appear aggravates the circumstances under consideration.

## CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Roger Batt be disbarred from the practice of law in the state of Kansas, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(1) (2011 Kan. Ct. R. Annot. 280).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 218 (2011 Kan. Ct. R. Annot. 379).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas reports.