IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 114,543

In the Matter of JOHN W. THURSTON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed April 15, 2016. Published censure.

*Kimberly L. Knoll*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with her on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *John W. Thurston*, respondent, argued the cause pro se.

*Per Curiam*:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, John W. Thurston, of Manhattan, an attorney admitted to the practice of law in Kansas in 2001.

On February 25, 2015, the office of the Disciplinary Administrator filed a formal complaint against the respondent, alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on March 17, 2015. On April 7, 2015, respondent entered into a joint stipulation of facts. Because there was no stipulation to the existence of KRPC violations, a hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on April 9, 2015, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property); and 1.16(d) (2015 Kan. Ct. R. Annot. 572) (termination of representation).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"10.    C.B. retained the respondent to represent him in a criminal case in Riley County District Court. C.B. faced a seven-count complaint which consisted of seven felony sexual offenses, involving three children.

"11.    On October 17, 2013, C.B. and the respondent signed a fee agreement that provided, in part:

'FEES AND EXPENSES:  You have agreed to pay the Firm for its legal services and expenses as follows:

- $30,000.00 Fee. The sum of $20,000.00 shall be paid on October 17, 2013. The remaining sum of $10,000.00 shall be paid in monthly payments with the remaining balance to be paid in full on or before April 17, 2014.

- If the matter goes to a jury trial an additional fee will be assessed. Said fee shall be determined at a later date and shall be due and owing 30 days prior to the date set for jury trial.

- These fees do not include any work to be done at the Appellate level or the Kansas Supreme Court.

- These fees do not include any out of pocket expenses paid or incurred by the firm on your behalf. Such expenses include, but

2

are not limited to: fees charged for discovery such as video copy fees and photocopy fees, filing fees for Municipal Appeals, fees for transcripts. Also not included are any fines, court costs, or other fees due to the court.

'TERMINATION BY CLIENT: You may terminate this agreement at any time, but you must give the Firm written notice of the termination. If you terminate this agreement, you are still obligated to pay the fees and expenses accrued to the time of termination. Said fees shall be calculated at the rate of $250 per hour.'

"12.    C.B. paid the respondent $23,100.00. The respondent did not deposit the funds into his trust account.

"13.    On December 19, 2013, the court conducted the preliminary hearing. At the preliminary hearing, the respondent engaged in limited cross-examination of the witnesses.

"14.    C.B. was bound over for trial on all 7 counts. Thereafter, on January 6, 2014, the court arraigned C.B. and scheduled the matter for trial on April 28, 2014.

"15.    On January 27, 2014, the respondent sent C.B. an electronic mail message. The electronic mail message provided:

'Your case progressed faster than I expected. An unfortunate byproduct is that we have to talk about the fee for a jury trial sooner than I expected. As you recall our fee agreement calls for a two-stage fee, the first part carrying us up to the point of jury trial. Given that the trial has been set for five days my fee will be $25,000. In addition we will need to have money set aside for investigator and expert witness fees. My estimate is that we will need an additional $10,000 set aside for those fees. Unfortunately due to the timeline imposed on us by the judge we will need to have those fees paid immediately. The witness/investigator fees

will be placed in our trust account. I wish there was a different way to handle this, but unfortunately we all have to recognize that there is a business aspect to every criminal case. We must handle this fee issue now, because if I need to withdraw from your case it needs to happen soon as to not disrupt the court's schedule.'

C.B. did not pay the additional fees.

"16.     On January 31, 2014, the respondent filed a motion to withdraw as counsel. The respondent provided the following three reasons for the motion to withdraw:

'1)     Unforeseen circumstances have developed in this case that prevent counsel from effectively representing the accused.

'2)     This is not due to any action or inaction on behalf of the accused, but rather due to circumstances beyond his control.

'3)     Should there be any change in the dates currently scheduled for the trial in this matter, any such delay will be attributed to the defendant for purposes of speedy trial calculations.'

On February 10, 2014, the court granted the respondent's motion to withdraw and appointed substitute counsel.

"17.     After withdrawing from representation of C.B., the respondent failed to provide C.B. with an accounting of the advance fee paid. Because the respondent failed to keep complete time records, it was difficult to determine the amount of the unearned fees. In fact, some of the respondent's time was tracked only by notations made on the respondent's calendar.

"18.     At the hearing on the formal complaint, the respondent testified that he worked between 70 and 80 hours on C.B.'s case.

4

'Q.     How many hours can you justify in this particular case?

'A.     If we're going off of just what [was] on the calendar–and I'll be honest, I haven't added those up. I mean, I've tried to go back as best as I could after talking to Mr. Ambrosio about it to determine what other time I did, what other time I spent on this case. My estimate is that I spent between 70 and 80 hours in total on the case. But, again, that's—its very artful because I didn't track it.'

Based upon that testimony, the hearing panel concludes the respondent worked 70 hours on C.B.'s case, thus, earning $17,500.00. The respondent owes C.B. $5,650 in unearned fees.

"19.     Subsequent counsel filed a motion for a new preliminary hearing, alleging that the respondent was ineffective in his representation of C.B. On April 11, 2014, the court granted the motion for a new preliminary hearing, concluding that there was 'no apparent tactical or strategic advantage to be gained from such abbreviated cross-examination of the witnesses.'

"*Conclusions of Law*

"20.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.15 and KRPC 1.16, as detailed below. [Footnote: The deputy disciplinary administrator also alleged that the respondent violated KRPC 1.5. The hearing panel, however, concludes that insufficient evidence was presented to establish a violation of KRPC 1.5.]

5

"KRPC 1.15

"21.    Lawyers must properly safeguard the property of their clients and third persons. Properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. KRPC 1.15(a).

"22.    A lawyer may charge a flat fee to a client for a specific task to be undertaken. When the flat fee is paid to the lawyer, it must be deposited into the lawyer's trust account and the fee cannot be withdrawn until it is earned. Since a flat fee is not earned until completion of the task, the entire flat fee must remain in the lawyer's trust account until that task is completed unless the lawyer and client otherwise agree to partial withdrawals based upon the amount earned for completion of specified subtasks. KRPC 1.15(a).

"23.    The respondent failed to deposit the flat fee received from C.B. into his trust account. Because the respondent failed to deposit unearned fees into his trust account, the hearing panel concludes the respondent violated KRPC 1.15(a).

"KRPC 1.16

"24.    KRPC 1.16 requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides the requirement in this regard:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

6

"25.     Upon termination, a lawyer needs to be in a position to accurately determine the fees earned to date. That requires lawyers to keep time records reflecting actual time spent in the representation. In this case, the respondent failed to keep adequate time records which would indicate the amount of unearned fees. Relying on notations on the respondent's calendar and on the respondent's recollection is unacceptable. However, for purposes of this case, it is the only available information.

"26.     Based upon the respondent's testimony, the hearing panel concludes that the respondent violated KRPC 1.16(d) when he failed to return unearned fees to C.B.

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"27.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"28.     *Duty Violated*.  The respondent violated his duty to his client to safeguard property.

"29.     *Mental State*.  The respondent negligently violated his duty.

"30.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to his client.

"Aggravating and Mitigating Factors

"31.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.  In reaching its

7

recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"32.    *Prior Disciplinary Offenses*.  The respondent has been previously disciplined on two occasions.  On October 29, 2009, the respondent entered into a diversion agreement with the disciplinary administrator's office, case number DA10632. In that case, the respondent stipulated that he violated KRPC 1.1. On June 14, 2013, the respondent entered into a second diversion agreement with the disciplinary administrator's office, case number DA11706.  In that case, the respondent stipulated that he violated KRPC 8.4(g).

"33.    *A Pattern of Misconduct*.  The respondent engaged in a pattern of misconduct. Throughout the period of representation, the respondent failed to keep reasonable time records on this and other matters.

"34.    *Substantial Experience in the Practice of Law*.  The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 2001.  At the time of the misconduct, the respondent has been practicing law for approximately 13 years.

"35.    *Indifference to Making Restitution*.  The respondent failed to return the unearned fees to C.B.

"36.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.  In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"37.    *Absence of a Dishonest or Selfish Motive*.  The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"38.    *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the*

8

*Transgressions.* The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts that gave rise to the violations.

"39.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active and productive member of the bar of Manhattan, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"40.     *Remoteness of Prior Offenses.* The two previous cases, which resulted in participation in the attorney diversion program, appear to be remote in character to the misconduct in this case.

"41.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.13     Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.

'7.3     Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"42.     The disciplinary administrator recommended that the respondent be censured and that the censure be published in the Kansas Reports. The respondent recommended that the hearing panel informally admonish the respondent for the violations.

9

"43. Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be censured and that the censure be published in the Kansas Reports. In addition, the hearing panel recommends that conditions be attached to the respondent's published censure. First, the hearing panel directs the respondent to permit the auditor employed by the disciplinary administrator's office to conduct a trust account audit within 90 days of the date of this report. Second, the hearing panel directs the respondent to submit written policies regarding time records and fee agreements which are in compliance with the Kansas Rules of Professional Conduct to the disciplinary administrator's office for approval within 30 days of the date of this report. Finally, the hearing panel directs the respondent to pay his client $5,650 within 30 days of the date of this report.

"44. Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, the discipline to be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2015 Kan. Ct. R. Annot. 350). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer. Respondent also was given adequate notice of the hearing before the panel and the hearing before this court. He filed no exceptions to the hearing panel's final hearing report.

10

With no exceptions before us, the panel's findings of fact are deemed admitted. Supreme Court Rule 212(c), (d) (2015 Kan. Ct. R. Annot. 369). Furthermore, the evidence before the hearing panel established the charged misconduct in violation of KRPC 1.15(a) (2015 Kan. Ct. R. Annot. 556) (safekeeping property); and 1.16(d) (2015 Kan. Ct. R. Annot. 572) (termination of representation) by clear and convincing evidence and supports the panel's conclusions of law. We therefore adopt the panel's findings and conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. At the panel hearing, at which the respondent appeared, the Disciplinary Administrator representative recommended published censure. The respondent requested informal admonition. The Hearing Panel ultimately recommended published censure, but it also "recommend[ed] certain conditions be attached to the respondent's published censure." Despite the permissive, nonbinding tone established by the panel's use of the word "recommend," it then directed the respondent to perform certain tasks within specified time limits:

> "First, the hearing panel directs the respondent to permit the auditor employed by the disciplinary administrator's office to conduct a trust account audit within 90 days of the date of this report. Second, the hearing panel directs the respondent to submit written policies regarding time records and fee agreements which are in compliance with the Kansas Rules of Professional Conduct to the disciplinary administrator's office for approval within 30 days of the date of this report. Finally, the hearing panel directs the respondent to pay his client $5,650 within 30 days of the date of this report."

These directions were not permissive or nonbinding. Rather, they conveyed clearly nonnegotiable requirements of behavior, and the deadlines for that behavior to occur were likely to ripen long before respondent's case reached its oral argument date before

11

this court. This is, in fact, exactly what occurred. The panel's Final Hearing Report bears a date of September 16, 2015, while this court heard oral argument on March 1, 2016—well after the longest of the panel's specified time limits—90 days—expired.

Although neither respondent nor his counsel contested the panel's "conditions" or the power of the panel to impose or enforce them, by the time the parties reached oral argument before this court, there was evident lack of unanimity on whether respondent had complied to the greatest extent possible. In particular, the representative of the Disciplinary Administrator challenged the nature and completeness of documents respondent had supplied to facilitate the required audit. As a result of what she viewed as less-than-enthusiastic embrace of the panel's directions, she sought a sanction more severe than the published censure she had sought at the panel hearing, *i.e.*, a 60-day suspension with a requirement of a reinstatement hearing.

Respondent's counsel resisted this effort to raise the stakes in this case and implored us to provide definitive guidance, particularly for the criminal defense bar, on how to account for flat fees and other advanced fees within ethical boundaries. Although prompted to do so by questions from several members of the court, respondent's counsel did not take issue with the panel's power or authority to order his client to fulfill certain requirements pending oral argument before this court; nor did he challenge the appropriateness of the Disciplinary Administrator's office seeking more serious sanctions at oral argument because of perceived deficiencies in respondents' compliance with interim panel orders. Also in response to questions from the bench, the representative of the Disciplinary Administrator stated that she had relied on her interpretation of several earlier disciplinary cases for the proposition that a hearing panel was empowered to suggest or require a course of action to be followed by a respondent between the panel hearing and Supreme Court oral argument and that this court would consider the respondent's resulting behavior in deciding discipline. She also appeared to favor more

12

extensive ethical guidance from this court for lawyers who accepted flat or other advanced fees.

We decline counsels' invitation to issue what we believe would be an advisory opinion on ethical accounting for flat fees and other advanced fees. Having adopted the panel's findings and conclusions, we have already done what is necessary on that subject in this case. We must, however, address the question of whether a disciplinary hearing panel may issue mandatory directives to respondents—directives to be ignored or treated casually at their peril. Certain of our prior cases may have been less than clear on this point, and on whether the court will look favorably upon the Disciplinary Administrator's recommendation of a more severe sanction as a result of what it regards as noncompliance with such directives. See *In re Barker*, 299 Kan. 158, 172-74, 321 P.3d 767 (2014) (court adopts panel's recommendation of 6-month suspension; agrees with certain of panel's suggested conditions, rejects another because of post-hearing developments); *In re Lee*, 287 Kan. 676, 682-83, 198 P.3d 140 (2008) (panel agrees with joint recommendation of published censure but attaches conditions; Disciplinary Administrator notes compliance with conditions at oral argument; court adopts panel's recommendation with suggested conditions); *In re Docking*, 282 Kan. 715, 147 P.3d 139 (2006) (panel's recommendation for 90-day suspension followed after respondent at least partially complied with interim restitution recommendation of panel). It is time for a course clarification, if not correction.

Simply put, our current Kansas Supreme Court Rules do not permit a disciplinary hearing panel to impose discipline or to require or enforce any conditions attached it— not between a panel hearing and oral argument to this court or at any other time. See Supreme Court Rule 211(f). The rules plainly endow hearing panels with the power to *recommend* sanctions for KRPC violations; *imposition* of discipline is left to this court alone, which is free to reject recommendations from the panel or from the Disciplinary

13

Administrator. See Supreme Court Rule 212(f). If members of the panel or the Disciplinary Administrator believe that a respondent has engaged in additional behavior meriting discipline in the period between issuance of the panel's Final Hearing Report and oral argument before this court, then any responsive action must safeguard the respondent's right to due process. For example, the Disciplinary Administrator's office could file a motion to remand the current case to the panel for further factfinding on the questioned behavior or it could file an entirely new Formal Complaint. If such a procedure is not followed, then we are likely to end up with precisely the kind of situation we face here: an oral argument in which counsel cannot agree on the new, potentially critical facts. Such a dispute is not one an appellate court can reliably resolve. We also note a further complicating factor in this particular controversy: Both sides appear to have overread at least one of the panel's conditions/directives. The second demands production of policies on fee agreements, not the agreements themselves.

All of this being said, we do not mean to discourage respondents from taking corrective or rehabilitative actions between their disciplinary hearings and their oral arguments in the Supreme Court. Indeed, such actions may appropriately be considered by us when we decide discipline, because they may be indicative of a respondent's acceptance of responsibility and/or remorse. We have previously remarked that respondents should keep us and the Disciplinary Administrator's office informed of any such actions by way of affidavit submitted before oral argument. See *In re Peloquin*, 301 Kan. 1, 9-12, 338 P.3d 568 (2014) (Disciplinary Administrator seeks indefinite suspension because of respondent's failure to comply with panel's interim recommendations; panel had rejected unworkable probation plan, urged 3-month suspension; court states "respondent would have been well served to have filed an affidavit" confirming psychological evaluation after panel hearing); see also *In re Freed*, 294 Kan. 655, 661-62, 279 P.3d 118 (2012) (panel recommends public censure plus conditions, including psychological evaluation of respondent; respondent's late

14

confirmation of evaluation, submission of revised, suggested probation plan underscore misconduct leading to complaint, counsel suspension over published censure). And we note that such a procedure is required in a case in which a probation plan with mandatory terms and conditions is in place. See Kansas Supreme Court Rule 211(g)(5). This is not a probation case; respondent has not sought probation, and the Disciplinary Administrator has not suggested it. We do not elect to impose it *sua sponte* here. See *In re Florez*, 298 Kan. 811, 819, 316 P.3d 755 (2014). The bottom line is that a lack of compulsion of corrective or rehabilitative actions does not necessarily equate to a lack of influence on our decision making.

We also hasten to add that there is one type of situation in which the court will certainly consider post-disciplinary hearing misbehavior by a respondent without additional factfinding in a remanded or new disciplinary proceeding. That situation arises when a respondent has been provided notice of the oral argument setting for his or her case and nevertheless fails to appear. In such a case, the violation of KRPC has occurred before the eyes of the court, see Kansas Supreme Court Rule 212(d), (e)(5) (respondent shall appear before the court), and no further factfinding below is necessary to preserve the respondent's right to due process. The court may impose discipline more severe than that recommended by the panel or Disciplinary Administrator as a result of the new violation, with or without a recommendation to do so. See *In re Barker*, 302 Kan. 156, 163, 351 P.3d 1256 (2015) (citing *In re Batt*, 296 Kan. 395, [405], 294 P.3d 241 [2013]) ("When a respondent fails to appear before this court when facing recommendations of indefinite suspension, a sanction greater than that recommended by the Disciplinary Administrator or panel, even up to disbarment, may be warranted. Certainly, the lack of an appearance at the hearing before this court qualifies as an additional aggravator of these circumstances under consideration.").

15

In this case, for all of the reasons just reviewed, we are not willing to impose discipline more severe than published censure. The hearing panel was not empowered to require respondent to engage in specific behaviors between issuance of the Final Hearing Report and oral argument before this court; and the more severe recommendation from the Disciplinary Administrator's office that arose out of the parties' interpretation of the panel's requirements and disagreement over the respondent's compliance is rejected.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that John W. Thurston be and is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2015 Kan. Ct. R. Annot. 293).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.