IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,200

In the Matter of LARRY D. EHRLICH,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed June 12, 2015. Published censure.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Larry D. Ehrlich*, respondent, argued the cause pro se.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent, Larry D. Ehrlich, of Wichita, an attorney admitted to the practice of law in Kansas in 1974.

On July 2, 2014, the office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer on July 18, 2014. Respondent also entered into a stipulation regarding rule violations. A consolidated hearing was held on the complaint before a panel of the Kansas Board for Discipline of Attorneys on September 17, 2014, where the respondent was personally present and was represented by counsel. The hearing panel determined that respondent violated KRPC 1.4(a) (2014 Kan. Ct. R. Annot. 495) (communication); and 5.3 (2014 Kan. Ct. R. Annot. 646) (responsibilities regarding nonlawyer assistance).

1

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

. . . .

"8.     Prior to his suspension from the practice of law on October 9, 2009, James A. Cline represented S.D.D. in a personal injury case as well as a workers' compensation case which arose from the same March 2008, accident in Butler County, Kansas.

"9.     Following his suspension from the practice of law, Render Kamas hired Mr. Cline to work as a law clerk. At that time, Mr. Cline encouraged S.D.D. to retain Render Kamas to represent her. S.D.D. took the respondent's advice and on October 30, 2009, S.D.D. entered written fee agreements with Render Kamas. The respondent represented S.D.D. in the personal injury case and Mel Gregory represented S.D.D. in the workers' compensation case.

"10.     On March 10, 2010, the day before the statute of limitations expired, the respondent filed a petition in the personal injury case on behalf of S.D.D. In a telephone conversation between the adjustor and Mr. Cline, the adjustor from the defendant's insurance carrier told Mr. Cline that the carrier would pay policy limits and that obtaining service on the defendant was not necessary. The respondent did not inform S.D.D. of the adjustor's statement that serving the defendant was not necessary.

"11.     The respondent took no steps to obtain service of process on the defendant. On July 10, 2010, S.D.D.'s personal injury claim became time barred because of the failure to obtain service of process on the defendant. The respondent failed to inform S.D.D. that the personal injury case was time barred for failure to obtain service on the defendant.

2

"12.     After the personal injury case was time barred, in March, 2011, the respondent asked the court for additional time to settle the case. The court granted additional time, but notified the respondent that the case would be dismissed in July 2011, if no other action occurred.

"13.     In June 2011, Mr. Cline sought reinstatement of his license to practice law. On June 25, 2011, the Kansas Supreme Court reinstated Mr. Cline's license to practice law. After Mr. Cline's license was reinstated, S.D.D. believed that the respondent and Mr. Cline represented her in the personal injury case and that Mr. Gregory and Mr. Cline represented her in the workers' compensation case.

"14.     In late 2011 or early 2012, the adjustor with whom Mr. Cline had the telephone conversation left the employment of the defendant's insurance carrier.

"15.     On August 7, 2012, the court held a hearing in Butler County District Court.  During that hearing, the court dismissed S.D.D.'s personal injury suit. The court memorialized the dismissal in a journal entry, signed by Mr. Cline, and filed by the court on August 13, 2012.

"16.     On August 9, 2012, at a hearing in the workers' compensation case, S.D.D. testified that she did not know the status of the personal injury case but believed that it was still being litigated.

"17.     In May, 2013, the court issued the award in the workers' compensation case. Shortly thereafter, S.D.D. frequently called Render Kamas inquiring when the award would be distributed.

"18.     On July 9, 2013, S.D.D. called Render Kamas and spoke with Mr. Cline's assistant. S.D.D. told Mr. Cline's assistant that Mr. Cline was to have filed a demand for compensation. Mr. Cline's assistant reviewed the file and determined that the demand had not been filed. That same day, the respondent executed a demand for compensation on behalf of S.D.D.

3

"19.     Because S.D.D. had not received the workers' compensation award, on July 30, 2013, Mr. Cline filed an application for penalties and sanctions on behalf of S.D.D.

"20.     On August 9, 2013, S.D.D. spoke by telephone with Mr. Cline. During the telephone conversation, Mr. Cline falsely informed S.D.D. that a hearing was scheduled on the demand for compensation and application for penalties and sanctions for August 22, 2013.

"21.     On August 12, 2013, S.D.D. sent Mr. Cline a letter, by certified delivery. In the letter, S.D.D. requested a copy of the document scheduling the demand for hearing, asked whether she was required to be present during the hearing, and informed Mr. Cline that she wished to be present during the hearing.

"22.     On August 15, 2013, or August 16, 2013, S.D.D. again spoke by telephone with Mr. Cline. During the telephone conversation, Mr. Cline falsely told S.D.D. that the hearing on August 22, 2013, was scheduled for 9:00 a.m., in the State Office Building, 7th Floor. Mr. Cline told S.D.D. that she did not need to be present during the hearing.

"23.     On August 22, 2013, S.D.D. and her husband went to the Workers' Compensation Office at the State Office Building, 7th Floor. When S.D.D. and her husband arrived, they were informed that her case was not scheduled to be heard that day. The workers' compensation judge directed S.D.D. to call Render Kamas. S.D.D. called Render Kamas and spoke with Mr. Cline's assistant. Mr. Cline's assistant directed S.D.D. and her husband to come to the law office as there were certain issues with her case.

"24.     S.D.D. and her husband went to Render Kamas and met with the respondent and Mr. Cline. During the meeting, Mr. Cline admitted that he lied to S.D.D. when he told her a hearing was scheduled on the demand and application. Also, during the meeting, S.D.D. learned for the first time that the personal injury case has been dismissed 2 years earlier for failure to obtain service on the defendant.

4

"25.  Based upon the parties' stipulation as well as the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.4 and KRPC 5.3, as detailed below.

"KRPC 1.4

"26.  KRPC 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' The respondent knew in July, 2010, that S.D.D.'s personal injury case was time barred. The respondent did not inform S.D.D. of the adjustor's statement that serving the defendant was not necessary. In August 2012, the court dismissed S.D.D.'s personal injury suit. However, the respondent did not advise S.D.D. that the case had been dismissed until August 22, 2013. As such, the hearing panel concludes that the respondent violated KRPC 1.4(a) when he failed to provide S.D.D. with information necessary to keep her reasonably informed regarding the status of the representation.

"KRPC 5.3

"27.  KRPC 5.3 provides:

'With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a)  a partner and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

5

(b)     a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c)     a lawyer shall be responsible for conduct of such a person that would be a violation of the rules of professional conduct if engaged in by a lawyer if:

(1)     the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2)     the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.'

The respondent knew that Mr. Cline, while acting as a law clerk, had not obtained service on the defendant in the personal injury case, at a time when the respondent could have remedied the problem. Further, the respondent violated KRPC 5.3 by failing to make a reasonable effort to ensure that Mr. Cline, while practicing law as the respondent's associate attorney, competently and diligently handled S.D.D.'s personal injury matter. Accordingly, the hearing panel concludes that the respondent violated KRPC 5.3.

"28.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"29.     *Duty Violated*.  The respondent violated his duty to his client to provide reasonable communication. The respondent also violated his duty to the profession.

"30.     *Mental State*.  The respondent negligently violated his duties.

"31.     *Injury*.  As a result of the respondent's misconduct, the respondent caused actual injury to S.D.D.

"Aggravating and Mitigating Factors

"32.     Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factor present:

"33.     *Prior Disciplinary Offenses*.  On January 18, 1991, the Kansas Supreme Court censured the respondent. A portion of the misconduct which gave rise to the published censure occurred at a time prior to the adoption of the Rules of Professional Conduct. The Court concluded that the respondent violated Disciplinary Rules 1-102(A), 6-101(A)(3), 7-101(A), 9-102(B), 9-102(B)(1), (3), and (4). Further, the Court concluded that the respondent violated Rule of Professional Conduct 1.3, 1.15, and 8.4(c). Finally, the Court concluded that the respondent also violated Supreme Court Rule 207(b).

"34.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"35.     *Absence of a Dishonest or Selfish Motive*.  The respondent's misconduct does not appear to have been motivated by dishonesty or selfishness.

"36.     *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions*.  The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts and the rule violations.

"37.     *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney*.  The respondent is an active and productive member of the bar of Wichita, Kansas. The respondent also enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

"38.     *Remorse*.  At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

"39.     *Remoteness of Prior Offenses.*  The discipline imposed in 1991 is remote in character and in time to the misconduct in this case.

"40.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.43     Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

8

'4.63      Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

'7.3      Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Recommendation*

"41.      The Disciplinary Administrator and counsel for the respondent recommended that the respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports.

"42.      Accordingly, based upon the stipulation, the findings of fact, the conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent be censured and that the censure be published in the Kansas Reports.

"43.      Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the disciplinary panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 211(f) (2014 Kan. Ct. R. Annot. 363). Clear and convincing evidence is "'evidence that causes the factfinder to believe that "the

9

truth of the facts asserted is highly probable.""" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent was given adequate notice of the formal complaint, to which he filed an answer, and adequate notice of the hearing before the panel and the hearing before this court. The respondent did not file exceptions to the hearing panel's final hearing reports. As such, the findings of fact are deemed admitted. Supreme Court Rule 212(c) and (d) (2014 Kan. Ct. R. Annot. 383).

The evidence before the hearing panel establishes by clear and convincing evidence the charged misconduct violated KRPC 1.4(a) (2014 Kan. Ct. R. Annot. 495) (communication) and 5.3 (2014 Kan. Ct. R. Annot. 646) (responsibilities regarding nonlawyer assistance), and it supports the panel's conclusions of law. We adopt the panel's conclusions.

The only remaining issue before us is the appropriate discipline for respondent's violations. The hearing panel unanimously recommended that the respondent be censured by the Kansas Supreme Court and that the censure be published in the Kansas Reports. At the hearing before this court, at which the respondent appeared, the Disciplinary Administrator and the respondent recommended this same discipline. We agree and find published censure to be appropriate. A minority of the court would impose a more severe discipline.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Larry D. Ehrlich be and is hereby disciplined by published censure in accordance with Supreme Court Rule 203(a)(3) (2014 Kan. Ct. R. Annot. 306).

10

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.

BILES, J., not participating.

ARNOLD-BURGER, J., assigned.[1]

---

[1]**REPORTER'S NOTE:** Judge Arnold-Burger, of the Kansas Court of Appeals, was appointed to hear case No. 113,200 vice Justice Biles under the authority vested in the Supreme Court by K.S.A. 20-3002(c).