IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 123,682

In the Matter of ROY T. ARTMAN,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed August 13, 2021. Disbarment.

*W. Thomas Stratton Jr.*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio*, of Morris, Laing, Evans, Brock & Kennedy Chtd., of Topeka, argued the cause, and *Roy T. Artman*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against the respondent Roy T. Artman, of Topeka, an attorney admitted to practice law in Kansas on October 4, 1991.

On December 15, 2020, the Disciplinary Administrator's office filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). The respondent filed an answer to the formal complaint on December 31, 2020, admitting all of the allegations set forth in the complaint. A panel of the Kansas Board for Discipline of Attorneys held a hearing on February 3, 2021. The respondent appeared with counsel, John J. Ambrosio.

At the conclusion of the hearing, the panel determined that the respondent violated KRPC 8.4(b) (2021 Kan. S. Ct. R. 427) (committing a criminal act that reflects adversely

1

on the lawyer's honesty, trustworthiness, or fitness as a lawyer), KRPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and KRPC 8.4(d) (engaging in conduct prejudicial to the administration of justice). The panel set forth its findings of fact and conclusions of law, along with its recommendation on disposition, in a final hearing report, the relevant portions of which are set forth below. The respondent took no exceptions to the hearing panel's report.

"*Findings of Fact*

. . . .

"8.      On November 3, 2016, the respondent purchased a 2011 Ford F-150 pickup truck, silver in color. On Friday, November 4, 2016, the respondent took at least a portion of the day off of work. Around noon, he drove his new vehicle to Lawrence to spend the day with his son. The respondent and his son ate lunch at Jefferson's West. With lunch, the respondent had two or three beers.

"9.      After lunch, the respondent and his son spent the afternoon at his son's home. Once his daughter-in-law returned home from work, the three went out to dinner at El Sol Mexican Restaurant. While at dinner, the respondent, his son, and his daughter-in-law were served a total of six 22 ounce margaritas and three shots of tequila. The respondent consumed one 22 ounce margarita and a portion of a second 22 ounce margarita. The respondent did not drink a shot of tequila. The respondent's daughter-in-law poured the third tequila shot into what was left of the respondent's second margarita and the respondent's daughter-in-law finished that drink.

"10.      After dinner, the respondent, his son, and his daughter-in-law returned to his son and daughter-in-law's home. The respondent did not consume any additional alcoholic beverages at his son's home.

"11.     At approximately 10:30 p.m., the respondent left Lawrence to travel home to Topeka. The respondent accessed the Kansas Turnpike at the Lecompton interchange. The respondent traveled west on the Kansas Turnpike, exiting at the East Topeka exit. After exiting the turnpike at the East Topeka exit, the respondent continued on I-70 in the left hand lane. The respondent passed Lieutenant Brandon Bichsel of the Capitol Police driving in his patrol car. The officer's patrol car camera was activated.

"12.     Ahead on the left, between the roadway and the Jersey barrier, was a disabled car. The hazard lights on the disabled vehicle were activated. Two people were outside the vehicle changing the tire and a third person was inside the vehicle.

"13.     As the officer approached the disabled vehicle, he moved to the left lane behind the respondent's truck and activated his emergency lights. When the officer activated the emergency lights, the respondent looked in his rearview mirror, saw the lights, and started to slow down.

"14.     Prior to the time when the officer activated his emergency lights, the respondent had been distracted by setting the stations on his radio. The respondent testified, however, that after the officer activated the emergency lights, he did not continue to set the stations on his radio. The respondent noticed that the officer's patrol car was slowing down and was not pursuing him.

"15.     The respondent did not see J.C. and A.E. outside the disabled vehicle. As the respondent's truck passed the disabled vehicle, it veered to the left, outside the respondent's lane of traffic, where it struck J.C. and A.E. as they were changing the tire in the median area. The respondent did not know what he hit, but he felt a thump.

"16.     J.C. was knocked to the pavement but did not suffer serious injuries. When A.E. was hit, he traveled 28 feet from the disabled car, sustained serious injuries, and died at the scene. His glasses were located in the left lane of traffic and his shoe was located on the other side of the Jersey barrier.

3

"17.     *The respondent testified that prior to striking J.C. and A.E., he did not see the disabled car.* After striking J.C. and A.E., the respondent looked at his side-view mirror and saw that it was damaged. *The respondent testified that after striking J.C. and A.E., he did not see the disabled vehicle.* The respondent did not stop, he did not pull over, he did not remain at the scene of the accident, and he did not render aid to J.C. and A.E. He continued traveling west on I-70. The respondent immediately crossed two lanes of traffic and exited the highway at Rice Road. He pulled over and looked at the damage to his truck. *The respondent testified that because his truck suffered minimal damage, he concluded that he hit an animal or a construction cone or sign.* Even though the respondent was not familiar with that portion of Topeka, the respondent did not return to the highway. The respondent traveled to 6th Street and proceeded home.

"18.     Each finding of fact must be based on clear and convincing evidence. To find that clear and convincing evidence has been presented, the hearing panel must conclude that the facts are highly probable. *In re B.D.-Y.*, 286 Kan. 686 (2008). Based on all the evidence before it, the hearing panel concludes that there is not clear and convincing evidence of statements made by the respondent during his testimony at the hearing on the formal complaint, as italicized in ¶ 17, above. The respondent's testimony, as detailed below, is inconsistent with other credible evidence presented at the hearing on the formal complaint.

a.     First, the hearing panel does not find it probable that the respondent did not see the disabled vehicle prior to or after striking J.C. and A.E. From a review of Exhibit 4, the hazard lights on the disabled vehicle were activated and visible. As such, the disabled vehicle would have been difficult, if not impossible, to overlook. The respondent acknowledged that the officer was slowing down and not pursuing him. The officer slowed down to assist the occupants of the disabled vehicle. Immediately after the respondent's truck struck J.C. and A.E., the respondent crossed two lanes of traffic, exited the highway, and accessed roads that he was unfamiliar with to proceed home. The hearing panel finds that the respondent's testimony, that he did not see the disabled vehicle prior to or after striking J.C. and A.E., lacks credibility.

4

b.      The hearing panel also does not find it probable that the respondent believed that he hit a construction sign, a construction cone, or an animal such as a bird. The respondent's truck struck two people. The respondent's truck struck A.E. with such force that A.E. ended up 28 feet from the point of impact, his glasses ended up in the roadway, his shoe was found on the other side of the Jersey barrier, and A.E. suffered such significant injuries that he died. The respondent's truck made visible, unusual movement when it struck J.C. and A.E. The evidence of the accident is inconsistent with a conclusion that the respondent reasonably believed that he struck a construction sign, a construction cone, or an animal such as a bird. Thus, the hearing panel concludes that the respondent's testimony, that he believed he hit a construction sign, a construction cone, or an animal such as a bird, lacks credibility.

"19.      Utilizing the video from Lieutenant Bichsel as well as information and records obtained from the Kansas Turnpike Authority, Kansas Highway Patrol Trooper Adam Simone, the law enforcement officer assigned to investigate the accident, was able to determine that the respondent may have been driving the truck which struck and killed A.E. On Monday, November 7, 2016, the trooper contacted the respondent at his place of employment. The trooper interviewed the respondent, photographed the truck, and towed the truck away for further investigation.

"20.      After providing the respondent with the warnings under *Miranda v. Arizona*, Trooper Simone interviewed the respondent. During the interview, the respondent failed to disclose that he consumed alcoholic beverages with dinner at El Sol Mexican Restaurant.

'TROOPER SIMONE:  Where were you coming from?

'THE RESPONDENT:  Lawrence.

5

'TROOPER SIMONE:  Okay, had you been drinking that night or anything?

'THE RESPONDENT:  I had a couple of drinks with lunch earlier that day.

'TROOPER SIMONE:  Okay.

'THE RESPONDENT:  Like at noon, 1:00

'TROOPER SIMONE:  Nothing that night?

'THE RESPONDENT:  No.'

Later during the same interview, the respondent again failed to disclose that he consumed alcoholic beverages at dinner.

'THE RESPONDENT:  I had, uh, lunch with my son we had two or three beers with lunch.

'TROOPER SIMONE:  Okay. Do you know where that was at?

'THE RESPONDENT:  It was at Jefferson's.

'TROOPER SIMONE:  In Lawrence?

'THE RESPONDENT:  In Lawrence.

'TROOPER SIMONE:  Okay. You didn't have anything after that though?

'THE RESPONDENT: No. It was, uh, it was probably close to 12:00, 12:30, 1:00 when we had lunch.

'TROOPER SIMONE: Okay. Where did you guys go after that?

'THE RESPONDENT: We went to his house.'

"21.     On May 19, 2018, the respondent notified the disciplinary administrator that he had been charged with a felony: leaving the scene of an accident involving death, in violation of K.S.A. 8-1602(b)(4), a level 6 felony, in Shawnee County District Court case number 18CR1069.

"22.     On November 13, 2019, a jury found the respondent guilty as charged, with leaving the scene of an accident involving death, a level 6 felony. Following the respondent's felony conviction, on November 27, 2019, the Supreme Court entered an order temporarily suspending the respondent's license to practice law. The district court sentenced the respondent to a prison sentence of 19 months, but the court granted the presumptive disposition of probation, for 24 months.

"*Conclusions of Law*

"23.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 8.4 (misconduct), as detailed below.

"KRPC 8.4(b)

"24.     'It is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.' KRPC 8.4(b). In this case, a jury found the respondent guilty of leaving the scene of an accident involving death, a level 6 felony. A conviction of leaving the scene of an accident involving death reflects on the respondent's honesty, trustworthiness,

7

and fitness as a lawyer in other respects. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(b).

"KRPC 8.4(c)

"25.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). The respondent engaged in conduct that involved dishonesty when he failed to disclose to the law enforcement officer that he consumed alcoholic beverages at dinner. By disclosing that he drank two or three beers at lunch but did not consume any alcoholic beverages after that, the respondent misled the officer. The respondent acknowledged this in his testimony when he described the factual basis for this violation as, 'not getting all the information to the officers.' Additionally, the respondent engaged in dishonest conduct by failing to return to the scene of the accident. As such, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"26.     'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d). The respondent engaged in conduct that was prejudicial to the administration of justice when he failed to disclose that he consumed alcoholic beverages at dinner during the evening hours of November 4, 2016, necessitating additional investigative work by the trooper. As such, the hearing panel concludes that the respondent violated KRPC 8.4(d).

"*American Bar Association*
*Standards for Imposing Lawyer Sanctions*

"27.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual

8

injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"28. Duty Violated. The respondent violated his duty to the public to maintain his personal integrity.

"29. Mental State. The respondent knowingly and intentionally violated his duty.

"30. Injury. The respondent's misconduct caused the ultimate injury—he took the life of another. A.E.'s parents, sons, and friends lost their loved one and the future they could have shared with A.E. A.E.'s parents provided written statements and testified at the hearing on the formal complaint about A.E. and the impact of the respondent's misconduct.

*"Aggravating and Mitigating Factors*

"31. Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

a. *Dishonest or Selfish Motive*. When questioned, the respondent denied consuming alcoholic beverages on Friday, November 4, 2016, in addition to the two or three beers consumed during lunch. Because of the circumstances involved, it can be inferred that the respondent's motivation for the dishonest conduct of denying the consumption of alcoholic beverages at dinner was a selfish attempt to avoid potential additional criminal liability. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty and selfishness.

9

b. *Submission of False Evidence, False Statements, or Other Deceptive Practices During the Disciplinary Process*. During the hearing on the formal complaint, the respondent attempted to explain his failure to disclose his consumption of the margaritas to the officer by claiming that he was distraught having just learned that he struck two people and killed one of them. However, on cross-examination, Mr. Stratton pointed out that the respondent's failure to disclose his consumption of alcoholic beverages with dinner occurred prior to the moment when the officer told him that he struck two people and killed one of them. The respondent's testimony during direct examination was, at best, misleading. The hearing panel is troubled by the respondent's attempt at deception through this testimony.

c. *Vulnerability of Victim*. The vulnerability of the victims in this case is not a typical form of vulnerability in an attorney disciplinary case. However, J.C. and A.E. were extremely vulnerable to the respondent's failure to safely operate his truck.

d. *Substantial Experience in the Practice of Law*. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1991. At the time of the misconduct, the respondent had been practicing law for more than 25 years.

e. *Illegal Conduct, Including that Involving the Use of Controlled Substances*. The respondent engaged in illegal conduct when he left the scene of a traffic accident involving death. A jury convicted the respondent following a trial. The fact that the respondent's misconduct is also criminal conduct is an aggravating factor.

"32.    Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its

10

recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.      *Absence of a Prior Disciplinary Record.* The respondent has not previously been disciplined.

b.      *The Present and Past Attitude of the Attorney as Shown by His Cooperation During the Hearing and His Full and Free Acknowledgment of the Transgressions.* The respondent self-reported the criminal charge, cooperated with the disciplinary process, and admitted the facts that gave rise to the violations. *But see* ¶ 31(b), above.

c.      *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney.* The respondent is an active, productive, and valued member of the bar of Topeka, Kansas. It is clear that the respondent enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by respondent's numerous and sincere letters of support received by the hearing panel.

d.      *Imposition of Other Penalties or Sanctions.* As a result of the criminal conviction, the respondent was granted presumptive probation, for a period of 24 months, from a 19-month prison sentence.

e.      *Remorse*. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct that resulted in A.E.'s death.

"33.    In addition to the above-cited factors, the hearing panel thoroughly examined and considered the following Standards:

11

'5.11    Disbarment is generally appropriate when:

   '(a)    a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

   '(b)    a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.'

'5.12    Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.'

*"Recommendations of the Parties*

"37.    The disciplinary administrator recommended that the respondent be disbarred. Counsel for the respondent recommended that the respondent's license to practice law be indefinitely suspended.

*"Recommendation of the Hearing Panel*

"38.    The hearing panel agrees with the parties that this case warrants either disbarment or an indefinite suspension of the respondent's license to practice law.

"39.    After careful[ly] considering all the evidence presented as well as the ABA Standards for Imposing Lawyer Sanctions, the hearing panel is convinced that the

12

aggravating circumstances warrant the recommendation of the ultimate sanction of disbarment. Accordingly, the hearing panel unanimously recommends that the respondent be disbarred.

"40.    The respondent's license to practice law has been suspended since November 27, 2019. The hearing panel further recommends that the effective date of the disbarment be made retroactive to the date of the temporary suspension.

"41.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

## DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2021 Kan. S. Ct. R. 276). "'Clear and convincing evidence is "evidence that causes the factfinder to believe that 'the truth of the facts asserted is highly probable.'"'" *In re Murphy*, 312 Kan. 203, 218, 473 P.3d 886 (2020).

The respondent was given adequate notice of the formal complaint, to which he filed an answer admitting all of the allegations. The respondent filed no exceptions to the final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2021 Kan. S. Ct. R. 281). The evidence before the hearing panel clearly established the charged misconduct violated KRPC 8.4(b) (committing a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer), KRPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or

13

misrepresentation), and KRPC 8.4(d) (engaging in conduct prejudicial to the administration of justice).

The only remaining issue is to determine the appropriate discipline for the respondent's violations. The hearing panel unanimously recommended disbarment retroactive to November 27, 2019, when the respondent's license to practice law was temporarily suspended. The Disciplinary Administrator's office agrees with the panel's recommendation. Counsel for the respondent requests that the respondent's law license be indefinitely suspended. The respondent personally acknowledged to the court that he made many mistakes on the night of the accident. Specifically, he acknowledged that he allowed a new vehicle to divert his attention from being a good driver. He advised the court that he "made contact" with an unknown object on the highway and failed to pull over immediately. When he did eventually pull over, the respondent told this court that he inspected his vehicle and found minimal damage to his truck, so he opted to drive home instead of going back to make a full inspection to find out what he "came in contact" with. We note here that the respondent's submission to this court is essentially a summary of the testimony he provided to the panel on this issue. The panel found the respondent's testimony was inconsistent with the evidence and lacked credibility. Although the respondent took no exception to these findings, he reiterated this justification for his actions when making his personal statement to the court during oral argument.

As for failing to tell the trooper about his consumption of margaritas at dinner the evening of the accident, the respondent reiterated to this court the explanation he provided to the panel: that he was distraught after having just learned that he struck two people, killing one of them, and it was never his intent to deceive the trooper. However, the hearing panel found in its final report that the respondent's failure to disclose his consumption of alcoholic beverages with dinner occurred *before* the trooper told him that

14

he struck two people and killed one of them. The panel found the respondent's testimony during direct examination, at best, to be misleading and was troubled by the respondent's attempt at deception through this testimony. The panel further found that the respondent's motivation for the dishonest conduct of denying the consumption of alcoholic beverages at dinner was a selfish attempt to avoid potential additional criminal liability. Again, respondent took no exception to these findings; instead, he reiterated justifications for his actions when making his personal statement to the court during oral argument.

We are troubled by the conflict between the respondent's decision not to file exceptions to the panel's final report and the respondent's decision to proffer to this court statements in mitigation that previously were found by the panel to be inconsistent with the evidence, lacking in credibility, deceitful, and dishonest.

After carefully considering the evidence presented, as well as the ABA Standards for Imposing Lawyer Sanctions, we adopt the panel's findings and conclusion and hold that the respondent should be disbarred. We further hold that the effective date of the disbarment should be made retroactive to November 27, 2019.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Roy T. Artman is disbarred from the practice of law in the state of Kansas, effective November 27, 2019, in accordance with Supreme Court Rule 225(a)(1) (2021 Kan. S. Ct. R. 275) for violations of KRPC 8.4(b), 8.4(c), and 8.4(d).

IT IS FURTHER ORDERED that the respondent shall comply with Supreme Court Rule 231 (2021 Kan. S. Ct. R. 286).

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to the respondent and that this opinion be published in the official Kansas Reports.