IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,867

In the Matter of JOSEPH R. BORICH III,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed August 5, 2022. One-year suspension subject to conditions.

*W. Thomas Stratton Jr.*, Deputy Disciplinary Administrator, argued the cause, and *Stanton A. Hazlett*, Disciplinary Administrator, was with him on the formal complaint for the petitioner.

*John J. Ambrosio,* of Morris, Laing, Evans, Brock & Kennedy, Chtd., of Topeka, argued the cause, and *Joseph R. Borich III*, respondent, argued the cause pro se.

PER CURIAM:  This is an original proceeding in discipline filed by the Office of the Disciplinary Administrator against the respondent, Joseph R. Borich III, of Leawood, an attorney admitted to the practice of law in Kansas in 1995. This matter involves the filing of a formal complaint, a hearing and findings of a hearing panel, and one subsequent proceeding before this court. The following summarizes the history of this case before the court:

On June 3, 2021, the Office of the Disciplinary Administrator filed a formal complaint against the respondent alleging violations of the Kansas Rules of Professional Conduct (KRPC). On June 23, 2021, the respondent, through counsel, filed an answer to the complaint.

On August 18, 2021, the hearing panel conducted the hearing on the formal complaint by Zoom, where the respondent appeared along with counsel. The hearing panel determined the respondent violated KRPC 1.1 (2022 Kan. S. Ct. R. at 327) (competence); KRPC 1.2 (2022 Kan. S. Ct. R. at 329) (scope of representation); KRPC 1.5 (2022 Kan. S. Ct. R. at 333) (fees); KRPC 1.15 (2022 Kan. S. Ct. R. at 372) (safekeeping property); KRPC 1.16 (2022 Kan. S. Ct. R. at 378) (terminating representation); and KRPC 8.4 (2022 Kan. S. Ct. R. at 434) (professional misconduct).

Upon conclusion of the hearing, the panel made the following findings of fact and conclusions of law, together with its recommendation to this court:

"*Findings of Fact*

"9.     The hearing panel finds the following facts, by clear and convincing evidence:

"10.    J.D. and C.D., complainants, retained the respondent to represent them in claims against their home builder for defects in their new home construction. On December 19, 2007, the respondent and J.D. and C.D. entered into a fee agreement. According to the one-page fee agreement J.D. and C.D. were to pay the respondent 'on a contingency basis of 33 1/3% above any monies recoverable, for the purposes of attempting to negotiate a settlement, representation at jury trial and appeals court in the claim for damages to their home' against the home builder. The fee agreement also provided that '[t]he client will be responsible for costs and expenses of the lawsuit, payable as due. Expenses shall be limited to filing fees, court fees, expert appraisal fees, deposition court reporter fees, and appeal brief printing and filing fees.' The contract provided for no other payments by J.D. and C.D.

"11.    Over the course of more than ten years that their case was pending, J.D. and C.D., particularly C.D., provided a substantial amount of time and work preparing legal filings and other documents in the case that the respondent ultimately reviewed, utilized, signed, and filed. The respondent acknowledged that C.D. provided a significant

2

amount of legal research and drafted many of the legal documents in the case. However, the respondent stated that he did not request this of C.D., that she did this on her own initiative, and the respondent maintained ultimate control over the litigation

"12.    In late 2008, after several unsuccessful attempts to mediate and settle the case with the home builder but before any lawsuit was filed, the respondent suggested an amendment to the original representation agreement to J.D. and C.D. In a letter dated December 19, 2008, to J.D., C.D., and a third client, the respondent wrote, in material part:

> 'I also thank you for committing to the attorney's fee contract whereby I still will remain on a 33 1/3% contingent fee on both your claims. However, each of you is to pay $1,000.00 in December in attorney's fees and $500.00 per month in attorney's fees starting in January. The attorney's fees will be deducted as a credit from the final contingency attorney fee award. Mr. Chapman will receive $250.00 a piece per month as the paralegal/expert consultant. Finally, the client will be responsible for all expert fees, court fees, mediation fees, and arbitration fees. Per our discussions, I will not return any attorney's fees if we are not successful, or alternatively, our legal relief turns out to be repairs by [the home builder]. I will not seek any additional fees other than what is outlined in this letter.'

The December 19, 2008, letter was signed by both J.D. and C.D.

"13.    J.D. and C.D. believed that the $500 monthly payments were a prepayment of the respondent's 33 1/3% contingent fee to which the parties previously agreed.

"14.    The respondent did not place the $500 monthly payments into his attorney trust account and instead kept the payments for himself because he believed the funds were already earned before he received them. However, the respondent acknowledged that he did not keep any record of his time to support his belief that the funds had been earned.

3

"15.     The December 19, 2008, letter did not state at what point or under what circumstances the fees would be considered 'earned' by the respondent.

"16.     After the new agreement was entered regarding attorney fees, J.D. and C.D. over time paid the respondent $46,910. The respondent gave no billing statements or accounting to J.D. and C.D. for the payments they made to him.

"17.     At one point during one of the mediation sessions with the home builder, the home builder offered to pay $75,000 to J.D. and C.D. to settle the case. The respondent advised J.D. and C.D. to accept the $75,000 offer, but J.D. and C.D. rejected the offer.

"18.     On August 28, 2009, the respondent filed a petition for damages against the home builder on behalf of J.D. and C.D. in Johnson County District Court, case number 09CV7881. On October 7, 2009, the case was removed to federal court based on a federal claim in the petition and the state district court case was terminated.

"19.     On December 1, 2010, the United States District Court for the District of Kansas entered summary judgment against J.D. and C.D. on their federal claim. The federal district court dismissed the claim for breach of the purchase agreement, sustaining the home builder's motion to compel arbitration on that claim, and declined to exercise supplemental jurisdiction over the state law claims for breach of limited warranty.

"20.     On or about February 23, 2011, the respondent demanded and accepted from J.D. and C.D. a $5,000 payment that was in addition to the amounts agreed to in the prior 2007 contingent fee agreement and 2008 amendment to the contingent fee agreement.

"21.     The respondent stated in an email message to C.D. that he requested the additional $5,000 because he 'reviewed [his] timesheets and the amount of time spent in this matter is almost incalculable. The bill would be significantly more in spite [*sic*] of $500/month for attorney fees and paralegal fees.' However, in a July 24, 2019, letter to the disciplinary administrator's office, the respondent's attorney at the time stated that no contemporaneously created time records of the time the respondent spent on this case

4

exist. Thus, the statement to J.D. and C.D. that the need for the $5,000 payment was false.

"22.    On April 27, 2011, the respondent filed a new petition for damages against the home builder on behalf of J.D. and C.D. in district court, case number 11CV3679.

"23.    On July 18, 2011, the district court entered a memorandum decision dismissing Count IV of the petition. The district court stayed Counts I and II, which involved claims for breach of express limited warranty, until Count III, a claim for breach of the purchase agreement, was determined during arbitration.

"24.    The respondent felt 'overwhelmed' and believed that the case against the home builder was 'monster litigation for a solo practitioner' like himself. The respondent testified, 'there's no way a sole practitioner could represent or go through that on his own. No way.' Prior to the 2013 arbitration, the respondent recommended that J.D. and C.D. hire attorney Jim Jackson to help the respondent with the case. They hired Mr. Jackson to work as co-counsel with the respondent. At the time Mr. Jackson was also retained it was to assist the respondent in filing a pleading when the respondent was unavailable to do so.

"25.    J.D. and C.D. paid Mr. Jackson directly for his work on an hourly basis. Over time, J.D. and C.D. paid Mr. Jackson a total of $48,803 for his representation in their case.

"26.    On May 3, 2013, the respondent demanded and accepted from J.D. and C.D. a $500 payment that was in addition to the amounts agreed to in the prior 2007 contingent fee agreement and 2008 amendment to the contingent fee agreement. The respondent stated that this additional $500 requested was '[d]ue to the extraordinary amount of time spent in April.'

"27.    In July 2013, J.D. and C.D. lost the arbitration. The arbitrator found in favor of the home builder on Count III of J.D. and C.D.'s petition.

5

"28.     On January 10, 2014, the district court entered an order granting the home builder's motion to confirm the arbitration award in 11CV3679.

"29.     Pursuant to K.S.A. 5-418(a)(3), '[a]n appeal may be taken from . . . [a]n order confirming or denying confirmation of an award' entered during arbitration. 'The appeal shall be taken in the manner and to the extent as from orders or judgments in a civil action.'

"30.     On January 22 and 24, 2014, J.D. and C.D. emailed the respondent about their desire to appeal the district court's order affirming the arbitration decision.

"31.     The respondent did not file a timely notice of appeal of the district court's order affirming the arbitration decision.

"32.     On September 30, 2015, the district court ruled that J.D. and C.D.'s fraud and negligent misrepresentation claims were barred from being brought outside the statute of limitations and their remaining limited warranty claims were precluded by law under the doctrines of *res judicata* and collateral estoppel based on the district court's confirmation of the arbitration determination.

"33.     The district court entered a final order adjudicating all outstanding claims on February 19, 2016.

"34.     Six notices of appeal were filed on behalf of J.D. and C.D. between October 26, 2015 and September 1, 2016. Two of these notices were prematurely filed. Three of the notices were never docketed with the Kansas Court of Appeals. One prematurely-filed appeal and one timely-filed appeal were docketed as appeal numbers 114,775 and 115,427 respectively.

"35.     On April 11, 2016, the Court of Appeals issued a show cause order why appeal numbers 114,775 and 115,427 should not be consolidated. Instead of responding to the show cause order, on April 26, 2016, the respondent filed identical and voluminous motions titled 'Motion to Dismiss for Lack of Appellate Jurisdiction,' which the court construed as voluntary dismissals of the two docketed appeals.

6

"36.     The Court of Appeals held that the brief filed on behalf of J.D. and C.D. 'attempt[ed] to make several rather convoluted arguments. In addition, it [was] nearly impossible to square [J.D. and C.D.'s] brief with the record on appeal.'

"37.     The Court of Appeals further held that J.D. and C.D. completely ignored in their initial brief the court's order that the parties brief the issue of whether the Court of Appeals had jurisdiction to consider their appeal. The reply brief only briefly addressed the appellate jurisdiction issue. The home builder fully briefed the jurisdiction issue.

"38.     In its August 18, 2017, opinion, the Court of Appeals held that the court 'lack[ed] jurisdiction to consider any of the issues' and dismissed J.D. and C.D.'s appeal.

"39.     The Kansas Supreme Court denied J.D. and C.D.'s petition for review of the Court of Appeals decision.

"40.     On May 4, 2018, J.D. and C.D. sent a letter to the respondent stating their desire to file a *writ of certiorari* to the United States Supreme Court. J.D. and C.D. also asked that the respondent provide them a full accounting of the money they had paid to him and others, including Mr. Jackson, stating their understanding that all funds they paid would be returned to them in the event no recovery was obtained from the home builder.

"41.     On May 13, 2018, the respondent told J.D. and C.D. that his representation of them was terminated. On May 15, 2018, the respondent's attorney, Douglas Patterson wrote to J.D. and C.D. confirming that the respondent terminated his representation. No funds were returned by the respondent to J.D. and C.D.

"42.     On June 21, 2018, after terminating his representation of J.D. and C.D., the respondent issued a $3,500 check to J.D. and C.D. from his UMB Bank trust account. A letter from the respondent's attorney, Mr. Patterson, indicated that the $3,500 was payment to J.D. and C.D. of an arbitration award that the respondent held in trust for J.D. and C.D.

7

"43.     During the disciplinary investigation in this matter, the respondent was asked to provide a copy of proof of the arbitration award, a copy of the check from the home builder, and proof of deposit of the check into the respondent's trust account. Through Mr. Patterson, the respondent stated that he had been mistaken and that there was no arbitration award. The $3,500 check was funded by a June 13, 2018, deposit of $4,000 to the respondent's trust account using his own personal funds.

"*Conclusions of Law*

"44.     Based upon the findings of fact, the hearing panel concludes as a matter of law that the respondent violated KRPC 1.1 (competence), KRPC 1.2 (scope of representation), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 1.16 (declining or terminating representation), and KRPC 8.4 (professional misconduct) as detailed below.

"KRPC 1.1 and KRPC 1.2

"45.     Lawyers must provide competent representation to their clients. 'Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.' KRPC 1.1. KRPC 1.2 provides in material part:

'(a)     A lawyer shall abide by a client's decisions concerning the lawful objectives of representation, subject to paragraphs (c), (d), and (e), and shall consult with the client as to the means which the lawyer shall choose to pursue. A lawyer shall abide by a client's decision whether to settle a matter.
. . . .
'(c)     A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent in writing.'

"46.     The comments to KRPC 1.1 provide additional clarity on an attorney's responsibilities. Competent representation 'includes inquiry into and analysis of the factual and legal elements of the problem' and 'adequate preparation.' KRPC 1.1, Cmt. 5.

8

'The required attention and preparation are determined in part by what is at stake; major litigation and complex transactions ordinarily require more elaborate treatment than matters of lesser consequence.' KRPC 1.1, Cmt. 5. Before contracting with other lawyers on a client's case, a lawyer 'should ordinarily obtain informed consent from the client and must reasonably believe that the other lawyer's services will contribute to the competent and ethical representation of the client.' KRPC 1.1, Cmt. 6.

"47.    Likewise, the comments to KRPC 1.2 are also helpful to consider in this case. 'A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking.' KRPC 1.2, Cmt. 1. Also, '[i]n questions of means, the lawyer should assume responsibility for technical and legal tactical issues, but should defer to the client regarding such questions as the expense to be incurred . . . .' KRPC 1.2, Cmt. 1. Further, '[a]n agreement concerning the scope of representation must accord with the Rules of Professional Conduct and other law. Thus, the client may not be asked to agree to representation so limited in scope as to violate Rule 1.1.' KRPC 1.2, Cmt. 5. Finally, '[w]hen lawyers from more than one law firm are providing legal services to the client on a particular matter, the lawyers ordinarily should consult with each other and the client about the scope of their respective representations and the allocation of responsibility among them. See Rule 1.2.' KRPC 1.1, Cmt. 7.

"48.    The respondent failed to provide J.D. and C.D. with competent representation. The respondent recognized his lack of competence in J.D. and C.D.'s case, to some extent, stating that he felt 'overwhelmed' and believed that the arbitration and litigation with the home builder was 'monster litigation for a solo practitioner' like himself. The respondent testified, 'there's no way a sole practitioner could represent or go through that on his own. No way.' The respondent failed to timely and properly file appeals on behalf of J.D. and C.D. In addition, the respondent accepted assistance from J.D. and C.D. in the case that would ordinarily be expected to be provided by a lawyer or the lawyer's staff. Both the United States District Court for the District of Kansas and the Court of Appeals noted significant deficiencies in the respondent's filings. Six notices of appeal were filed on behalf of J.D. and C.D. between October 26, 2015 and September 1, 2016, in the Court of Appeals. Two of these notices were prematurely filed. Three of the notices were never docketed with the Court of Appeals. The respondent failed to

9

appropriately respond to the Court of Appeals' show cause order regarding consolidation, filed a brief on behalf of J.D. and C.D. that contained 'convoluted arguments' and that was 'nearly impossible to square . . . with the record on appeal,' and ignored the Court of Appeals' order to address jurisdiction in the appellate brief and only briefly addressed jurisdiction in the reply brief.

"49.    The hearing panel concludes that the respondent failed to represent J.D. and C.D. with the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation in their case. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.1.

"50.    The respondent did not properly limit the scope of his representation. After accepting representation of J.D. and C.D., the respondent recommended they also hire Mr. Jackson to assist the respondent. J.D. and C.D. were not properly consulted prior to Mr. Jackson being brought in to work on the case. In fact, C.D. was under the impression that the respondent had negotiated Mr. Jackson's employment and that fees J.D. and C.D. paid to Mr. Jackson would be credited against the 33 1/3% contingency fee. Recommending that J.D. and C.D. hire Mr. Jackson to help with the litigation at their own additional cost after the respondent had already committed to representing J.D. and C.D. supports a finding that the respondent was not competent to handle the clients' case and unreasonably limited the scope of his representation.

"51.    The hearing panel concludes that the respondent improperly limited the scope of his representation of J.D. and C.D. when he recommended that they hire another attorney to assist the respondent at the clients' own expense and accepted and utilized assistance from J.D. and C.D. beyond that reasonably expected from a client under Rule 1.2. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.2(c).

"KRPC 1.5(d)

"52.    An attorney's fee must be reasonable. KRPC 1.5(a). Contingent fee agreements must be in writing. KRPC 1.5(d) provides the requirement in this regard:

10

'A fee may be contingent on the outcome of the matter for which the service is rendered . . . . A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, and the litigation and other expenses to be deducted from the recovery.'

"53.    The respondent entered into a contingency fee agreement with J.D. and C.D. The initial December 19, 2007, contingency fee agreement, and December 19, 2008, amendment to that contingency fee agreement were both reduced to writing.

"54.    However, the December 19, 2008, amendment to the contingency fee agreement did not specify in what event the funds paid by J.D. and C.D. would be regarded as earned by the respondent. This understandably resulted in J.D. and C.D.'s confusion about the way the respondent treated their monthly payments—i.e., not depositing those payments into a trust account, not providing J.D. and C.D. with billing statements or an accounting to show that the respondent treated those payments as earned upon receipt, and refusing to refund the payments when there was no recovery from the home builder.

"55.    'A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal . . . .' KRPC 1.5(d). The December 19, 2008, amendment to the contingent fee agreement did not state the method by which the respondent's fee was to be determined, the amount that would accrue to the respondent, or at what point those amounts would accrue to the respondent. Accordingly, the hearing panel concludes that the amendment to the contingent fee agreement violated KRPC 1.5(d).

"56.    On or about February 23, 2011, the respondent demanded and accepted from J.D. and C.D. a $5,000 payment that was in addition to the amounts agreed to in the prior 2007 contingent fee agreement and 2008 amendment to the contingent fee agreement. Also, on or about May 3, 2013, the respondent demanded and accepted from J.D. and C.D. a $500 payment that was in addition to the amounts agreed to in the prior 2007 contingent fee agreement and 2008 amendment to the contingent fee agreement.

11

Finally, the respondent did not keep contemporaneously time records to show whether or how these additional amounts were earned.

"57.    The hearing panel concludes that the respondent amended the parties' existing contingent fee agreement to an agreement that was unreasonable and did not comply with the requirements of KRPC 1.5(d). Thus, the hearing panel concludes that the respondent violated KRPC 1.5(a) and KRPC 1.5(d).

"KRPC 1.15(a)

"58.    Lawyers must properly safeguard the property of their clients and third persons. Properly safeguarding the property of others necessarily requires lawyers to deposit unearned fees into an attorney trust account. KRPC 1.15(a). 'A lawyer may charge a flat fee to a client for a specific task to be undertaken. When the flat fee is paid to the lawyer, it must be deposited into the lawyer's trust account and the fee cannot be withdrawn until it is earned.' *In re Thurston*, 304 Kan. 146, 149, 371 P.3d 879 (2016). A flat fee is not earned until the agreed task is completed. A lawyer and client may agree to partial withdrawals based on completion of agreed subtasks. *Id*.

"59.    The respondent's December 19, 2008, amendment to the contingency fee agreement via a letter to J.D. and C.D. does not provide for when or in what event the $500 monthly payments would be earned.

"60.    J.D. and C.D. understood that the $500 monthly payments were a prepayment of the respondent's contingent fee to which the parties previously agreed.

"61.    During the hearing, the respondent testified that he did not place the $500 monthly payments into his attorney trust account because he considered the funds to have already been earned before he received the payments. However, the respondent acknowledged that he did not keep any record of his time that might support this belief. The respondent's explanation for his failure to place these payments into his trust account—that he had already earned the fees before they were paid—is not supported by the evidence.

12

"62.    The parties' December 19, 2008, revised fee agreement does not provide for when attorney fees would be earned other than at the conclusion of the case, and the respondent kept no contemporaneous time records to show his time spent in the case prior to paying himself. Accordingly, the hearing panel concludes that the respondent violated KRPC 1.15(a) by failing to deposit unearned fees, thus, the property of others, into his attorney trust account.

"KRPC 1.15(b)

"63.    Lawyers must provide an accounting of fees paid upon request. KRPC 1.15(b) provides:

'Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.'

"64.    On May 4, 2018, J.D. and C.D. requested an accounting of the money they had paid up to that date. In the letter, J.D. and C.D. provided their own accounting of their payments in the case. J.D. and C.D. also asked the respondent to confirm he had an attorney trust account and that he had safeguarded their payments separate from his own personal or business accounts. The respondent replied through his attorney:

'As to the remainder of your letter concerning your request for information on an account, such account does not exist and never has. You know that. Pursuant to your agreement with Mr. Borich, you paid Mr. Borich the sums described in your letter. You also paid the additional monies to Mr. Jackson, [R.C.], for the arbitration and other costs. There was no conversation on May 2, 2018 in this regard. *Accordingly, any suggestion that any refund will be made to you for any purposes is specifically denied.*'

13

The respondent never provided an accounting to J.D. and C.D.

"65.     The hearing panel concludes that the respondent violated KRPC 1.15(b) when he failed to promptly provide J.D. and C.D. an accounting of the funds they had paid to him.

"KRPC 1.15(d)

"66.     KRPC 1.15(d) requires a lawyer to preserve the identity of funds or other property belonging to a client. Specifically, KRPC 1.15(d) requires:

'All funds of clients paid to a lawyer or law firm, including advances for costs and expenses, shall be deposited in one or more identifiable accounts maintained in the State of Kansas with a federal or state chartered or licensed financial institution and insured by an agency of the federal or state government, and no funds belonging to the lawyer or law firm shall be deposited therein (with certain exceptions inapplicable here).'

"67.     The respondent commingled his personal funds with his clients' and third persons' funds. The respondent deposited unearned fees into his operating account. Additionally, the respondent deposited $4,000 of his personal funds into his attorney trust account to cover a $3,500 check he paid to J.D. and C.D. As a result, the hearing panel concludes that the respondent violated KRPC 1.15(d).

"KRPC 1.16(a)

"68.     In certain circumstances, attorneys must withdraw from representing a client. KRPC 1.16 provides:

'(a)     Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: . . . the representation will result in violation of the rules of professional conduct or other law . . . .'

14

The respondent should have withdrawn from representing J.D. and C.D. when it became clear that he was not competent to handle the representation. The hearing panel concludes that the respondent's failure to withdraw amounts to a violation of KRPC 1.16(a).

"KRPC 1.16(d)

"69. KRPC 1.16(d) requires lawyers to take certain steps to protect clients after the representation has been terminated. Specifically, KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'

'Upon termination, a lawyer needs to be in a position to accurately determine the fees earned to date. That requires lawyers to keep time records reflecting actual time spent in the representation.' *In re Thurston*, 304 Kan. 146, 149, 371 P.3d 879 (2016).

"70. In a July 24, 2019, letter to the disciplinary administrator's office, the respondent's attorney stated that no contemporaneously created time records of the time the respondent spent on this case exist. Further, on August 17, 2021, the parties entered into a written stipulation that the respondent violated KRPC 1.16 by failing to keep time records reflecting actual time spent in the representation [of] J.D. and C.D.

"71. The hearing panel concludes that the respondent violated KRPC 1.16(d) when he failed to keep accurate time records reflecting the time he spent in the representation. See *In re Thurston*, 304 Kan. 146, 371 P.3d 879 (2016).

"KRPC 8.4(c)

"72. 'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' KRPC 8.4(c). After the

15

termination of his representation of J.D. and C.D., the respondent issued a $3,500 check to J.D. and C.D. from his trust account, indicating that it was an arbitration award paid by the home builder. There was never an arbitration award and never any payment from the home builder. The $3,500 check was funded by a June 13, 2018, deposit of $4,000 to the respondent's trust account using his own personal funds.

"73. The respondent knew his statement to his clients was false because just days before, the respondent deposited $4,000 of his own funds into his trust account to cover the check. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(c).

"KRPC 8.4(d)

"74. 'It is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice.' KRPC 8.4(d).

"75. Both the United States District Court for the District of Kansas and the Court of Appeals noted significant deficiencies in the respondent's filings. Six notices of appeal were filed in the Court of Appeals on behalf of J.D. and C.D. between October 26, 2015 and September 1, 2016. Two of these notices were prematurely filed. Three of the notices were never docketed with the Court of Appeals. The respondent failed to appropriately respond to the Court of Appeals' show cause order regarding consolidation, filed a brief on behalf of J.D. and C.D. that contained 'convoluted arguments' and that was 'nearly impossible to square . . . with the record on appeal,' and ignored the Court of Appeals' order to address jurisdiction in the appellate brief and only briefly addressed jurisdiction in the reply brief.

"76. The hearing panel concludes that the respondent engaged in conduct that was prejudicial to the administration of justice when he filed pleadings in the United States District Court for the District of Kansas and the Kansas Court of Appeals that ignored court orders and were notably deficient. Accordingly, the hearing panel concludes that the respondent violated KRPC 8.4(d).

16

"77.　　In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"78.　　*Duty Violated*. The respondent violated his duties to his clients, the public, and the legal system. The respondent violated his duties to his clients to charge a reasonable fee and to properly safeguard client property. The respondent violated his duty to the public to maintain his personal integrity. Finally, the respondent violated his duty to the legal system to refrain from conduct that is prejudicial to the administration of justice.

"79.　　*Mental State*. The respondent negligently violated some of his duties and knowingly violated other duties.

"80.　　*Injury*. As a result of the respondent's misconduct, the respondent caused actual and potential injury to his clients, the legal system, and the legal profession. The respondent's misconduct caused actual injury to his clients in the form of unreasonably increased attorney and other legal fees, reduced chance of successful resolution of their claims, and increased negative emotional toll related to their case. The respondent's misconduct caused actual injury to the legal system by wasting the courts' time with addressing pleadings and other filings that did not conform to the rules and orders of the jurisdiction. Finally, the respondent's dishonest conduct injured the legal profession.

"Aggravating and Mitigating Factors

"81.　　Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its

recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

"82.     *Dishonest or Selfish Motive*. The respondent exhibited a selfish motive in requesting additional flat fee payments after initially accepting J.D. and C.D.'s case on a contingency basis. Requiring the additional payments reduced his risk and increased his clients' risk in the litigation beyond what was initially agreed. Accordingly, the hearing panel concludes that the respondent's misconduct was motivated by selfishness. However, as discussed below, this is mitigated significantly by evidence that the respondent put a substantial amount of time and work into J.D. and C.D.'s case.

"83.     *A Pattern of Misconduct*. The respondent engaged in a pattern of misconduct by repeatedly failing to deposit unearned fees into his attorney trust account. The respondent engaged in his pattern of misconduct for a period of years. Accordingly, the hearing panel concludes the respondent's pattern of misconduct is an aggravating factor in this case.

"84.     *Multiple Offenses*. The respondent committed multiple rule violations. The respondent violated KRPC 1.1 (competence), KRPC 1.2 (scope of representation), KRPC 1.5 (fees), KRPC 1.15 (safekeeping property), KRPC 1.16 (terminating representation), and KRPC 8.4 (professional misconduct). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

"85.     *Vulnerability of Victim*. The evidence showed that J.D. and C.D. were vulnerable to the respondent's misconduct. They were put into a position where they could not terminate the respondent's representation without serious repercussions to their case, which is evidenced by their agreement to pay additional fees to the respondent and Mr. Jackson beyond what was initially agreed at the outset of their case. The hearing panel concludes that vulnerability of J.D. and C.D. is an aggravating factor.

"86.     *Substantial Experience in the Practice of Law*. The Missouri Supreme Court admitted the respondent to the practice of law in 1973 and the Kansas Supreme Court admitted the respondent to practice law in 1995. As such, at the time of the misconduct in this case, the respondent had been licensed to practice law for more than

18

30 years. The hearing panel concludes that the respondent has substantial experience in the practice of law.

"87.  *Indifference to Making Restitution*. The respondent failed to refund any portion of the attorney fees J.D. and C.D. paid to him. The hearing panel concludes that this is an aggravating factor.

"88.  Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

"89.  *Absence of a Prior Disciplinary Record*. The respondent has not previously been disciplined. The hearing panel concludes the lack of any prior discipline in combination with the respondent's long legal career is a significant mitigating factor.

"90.  *Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct*. During the pendency of J.D. and C.D.'s case, the respondent's marriage ended in divorce. In that same time, the respondent experienced serious health conditions that resulted in major surgery, a stroke, and a heart irregularity requiring hospitalization after the conclusion of the case. The severity of the health conditions and personal issues may have contributed to the misconduct in this case. The hearing panel concludes this is a mitigating factor.

"91.  *The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions.* The respondent cooperated with the disciplinary process. Additionally, the respondent admitted that he violated KRPC 1.16. However, the respondent denied other violations of the Kansas Rules of Professional Conduct and refused any refund of attorney fees paid to J.D. and C.D. On balance, the hearing panel finds the respondent's cooperation and admission to be a mitigating factor.

"92.  *Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General*

19

*Reputation of the Attorney*. The respondent enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by nine letters of support and the testimony of two fellow attorneys. The hearing panel concludes this is an important mitigating factor.

"93.     *Remorse*. At the hearing on this matter, the respondent expressed some remorse for the result of J.D. and C.D.'s case. The respondent acknowledged he made mistakes in J.D. and C.D.'s case, took some responsibility for the case result, and exhibited remorse for the negative impact that his actions had on J.D. and C.D. The hearing panel concludes this is a mitigating factor in this case.

"94.     *The respondent's overall intentions shown through his actions*. It is clear based on the evidence that J.D. and C.D. paid a substantial amount of money to the respondent and Mr. Jackson and contributed significant hours to working on their own case. It is also clear that the respondent spent a substantial amount of time and effort on his clients' case. This case was complex. It involved three mediation sessions, an arbitration session, state court litigation, and federal litigation. The case also involved an appeal to the Court of Appeals and petition for review to the Kansas Supreme Court. Overall, the case lasted more than 10 years. The respondent represented J.D. and C.D. throughout the entire case at every level. The hearing panel has no doubt that the respondent expended a substantial amount of time to handle J.D. and C.D.'s case. The hearing panel concluded that this is an important mitigating factor.

"95.     In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

"4.12    'Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.'

"4.13    'Reprimand is generally appropriate when a lawyer is negligent in dealing with client property and causes injury or potential injury to a client.'

20

"4.42    'Suspension is generally appropriate when:

'(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

'(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.'

"4.43    'Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.'

"4.52    'Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client.'

"4.53    'Reprimand is generally appropriate when a lawyer:

'(a)    demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

'(b)    is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.'

"4.62    'Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.'

"4.63    'Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.'

"7.2    'Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

21

"7.3     'Reprimand is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public, or the legal system.'

"*Discussion*

"96.     The hearing panel has the duty to find facts by clear and convincing evidence. The hearing panel also has the duty to determine whether those facts establish violations of the Kansas Rules of Professional Conduct or the Rules Relating to Discipline of Attorneys. If the hearing panel concludes that a respondent violated the rules, the hearing panel must then consider factors in mitigation and aggravation and make a recommendation for discipline.

"97.     The hearing panel is not authorized to resolve fee disputes between clients and attorneys. Determining a fee dispute requires a different presentation of evidence and type of analysis than that involved in an attorney discipline proceeding.

"98.     The respondent's misconduct in this case contributed to a misunderstanding with his clients regarding how their payments would be treated. First, the 2008 amendment to the attorney fee contract failed to describe the method by which the respondent's fee was to be determined, the amount that would accrue to the respondent, or at what point or under what circumstances those amounts would accrue to the respondent. Second, the respondent treated J.D. and C.D.'s payments as earned fees without providing J.D. and C.D. with an accounting for how those fees were handled or reaching an agreed understanding of the point when those fees were earned by the respondent. Finally, the respondent did not hold the payments in his trust account until he could establish that the payments were earned.

"99.     The disciplinary administrator requested the hearing panel recommend that the respondent be required to refund J.D. and C.D. for the attorney fees they paid in their case against the home builder. At one point during the litigation with the home builder, the home builder offered $75,000 to resolve the case with J.D. and C.D. The respondent recommended that J.D. and C.D. accept $75,000 to settle the case. Had the respondent fully complied with the Rules of Professional Conduct, he might have been

22

able to establish that he was entitled to keep the full $46,910 J.D. and C.D. paid to him. However, the evidence shows that this was not the case, and the hearing panel concludes that the respondent should not keep the full $46,910 that J.D. and C.D. paid.

"100.    The hearing panel also recognizes that the respondent provided valuable services to J.D. and C.D. over the course of ten years in their case against the home builder.

"101.    Under the original Attorney Fee Contract entered on December 19, 2007 with J.D. and C.D., the respondent would have received '33 1/3% above any monies recoverable.' Had J.D. and C.D. accepted the $75,000 offer by the home builder, the respondent would have been entitled to an attorney fee of $25,000. The hearing panel concludes that the respondent should be permitted to retain the $25,000 that he would have been entitled to under the original December 19, 2007, attorney fee contract had the case settled as he recommended and be required to refund J.D. and C.D. the remaining $21,910 of their payments to him. The disciplinary administrator requested that the respondent also be required to reimburse J.D. and C.D. for $1,876.93 they paid to other individuals working with the respondent. The amounts paid to individuals other than the respondent are not before the hearing panel and the hearing panel makes no recommendation regarding these amounts.

"*Recommendation of the Parties*

"102.    The disciplinary administrator recommended that the respondent be suspended for one year and be required to undergo a reinstatement hearing pursuant to Rule 232 (2021 Kan. S. Ct. R. 287) prior to reinstatement.

"103.    The respondent recommended that the hearing panel recommend something less than suspension as discipline.

"*Recommendation of the Hearing Panel*

"104.    Accordingly, based upon the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent

23

be suspended for a period of 90 days. The hearing panel further recommends that the respondent be ordered to refund J.D. and C.D. $21,900 of the attorney fees that were paid to the respondent by J.D. and C.D.

"105.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the findings of the hearing panel, and the arguments of the parties and determines whether violations of KRPC exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see Supreme Court Rule 226(a)(1)(A) (2022 Kan. S. Ct. R. at 281). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

The respondent was given adequate notice of the formal complaint to which he filed an answer. The respondent was also given adequate notice of the hearing before the panel and the hearing before this court. He did not file exceptions to the hearing panel's final hearing report.

With no exceptions before us, the panel's factual findings and conclusions of law are deemed admitted. Supreme Court Rule 228(g)(1), (2) (2022 Kan. S. Ct. R. at 287). Furthermore, the facts before the hearing panel establish by clear and convincing evidence the charged misconduct in violation of KRPC 1.1 (2022 Kan. S. Ct. R. at 327) (competence); KRPC 1.2 (2022 Kan. S. Ct. R. at 329) (scope of representation); KRPC 1.5 (2022 Kan. S. Ct. R. at 333) (fees); KRPC 1.15 (2022 Kan. S. Ct. R. at 372) (safekeeping property); KRPC 1.16 (2022 Kan. S. Ct. R. at 378) (terminating

24

representation); and KRPC 8.4 (2022 Kan. S. Ct. R. at 434) (professional misconduct). The evidence also supports the panel's conclusions of law. We, therefore, adopt the panel's findings and conclusions.

The only remaining issue is to decide the appropriate discipline for these violations. This court is not bound by the recommendations made by the Disciplinary Administrator or the hearing panel. See *In re Biscanin*, 305 Kan. 1212, 1229, 390 P.3d 886 (2017).

After carefully considering the evidence presented, as well as the ABA Standards for Imposing Lawyer Sanctions, we think the disciplinary recommendations offered by the hearing panel fail to reflect the significance of the misconduct that occurred in this case. We conclude that the respondent must repay the full $46,910 to the claimants and be suspended from the practice of law for one year subject to conditions set forth below.

As it pertains to the amount owed to the complainants, the Disciplinary Administrator requested that the respondent be required to refund J.D. and C.D. for the full $46,910 they paid respondent in attorney fees in their case against the home builder.

The hearing panel maintained that the $46,910 refund amount should be offset by $25,000 because the home builder offered $75,000 to resolve the case very early on in the litigation. The panel observed that under the original Attorney Fee Contract entered on December 19, 2007, with J.D. and C.D., the respondent would have received "33 1/3% above any monies recoverable." Therefore, had J.D. and C.D. accepted the $75,000 offer by the home builder, the respondent would have been entitled to an attorney fee of $25,000. The hearing panel reasoned that the respondent should be permitted to retain the $25,000 that he would have been entitled to had J.D. and C.D. accepted the settlement offer as he recommended. Thus, the panel concluded that the respondent should be

required to refund J.D. and C.D. only the remaining $21,910 of their payments as restitution.

We reject the panel's reasoning and agree with the Disciplinary Administrator's recommendation regarding the amount respondent is required to refund J.D. and C.D. The refusal of a settlement offer, especially early in the litigation when the offer is substantially lower than the plaintiffs and counsel have valued their damages, should not be considered a triggering event that entitles consideration of an attorney fee owed to counsel. This is especially true in this instance when nearly all the litigation expenses were incurred following the failed settlement negotiations. The hearing panel found that J.D. and C.D. paid $46,910 to the respondent and contributed significant hours working on their own case. The case was complex. It involved three mediation sessions, an arbitration session, state court litigation, and federal litigation. The case also involved an appeal to the Court of Appeals and petition for review to the Kansas Supreme Court. Overall, the case lasted more than 10 years. The respondent represented J.D. and C.D. throughout the entire case at every level. Regarding this representation, the hearing panel found—and the respondent did not contest—that multiple serious rule violations occurred at nearly every phase of the litigation and caused most of the expenses incurred by J.D. and C.D. While the hearing panel recognized that the respondent expended a substantial amount of time to handle the case, this does not equate to money that the respondent is entitled to via the initial fee agreement. We conclude the amount owed to J.D. and C.D. is $46,910.

Also worthy of mention is the troubling decision of both the respondent and counsel in this disciplinary action to cast blame on the complainants. Characterizations of the complainants as difficult and impossible permeated the hearings in this matter. Counsel also opined that the respondent should have "kicked them [complainants] to the side" during oral presentation to this court. Both respondent and counsel paradoxically took the position that the complainants should have filed a malpractice action or some

26

sort of fee claim in a separate action to recoup their losses as a result of respondent's inept legal representation.

As the hearing panel found, it was the respondent's misconduct that caused actual injury to his clients in the form of unreasonably increased attorney and other legal fees. It was the respondent's actions that reduced the chance of successful resolution of the complainants' claims and increased the emotional stress related to their case. It was the respondent's misconduct that caused injury to the legal system by wasting the courts' time with pleadings and other filings that did not conform to the rules and orders of the jurisdiction. And it was the respondent's dishonest conduct that injured the legal profession. Counsel and respondent's deflection of responsibility to anyone other than the respondent is not supported by facts or findings in the record before us. Blaming the complainants serves only to exacerbate the minimization and denial of the gross misconduct that occurred in this matter and to highlight the respondent's failure to accept responsibility for his conduct.

We hold that the appropriate sanction in this matter is a one-year suspension and that the respondent is required to refund the complainants $46,910 paid in attorney fees. If, after a period of 90 days of suspension, the respondent has made full repayment, the remaining nine months of suspension will be stayed. If the repayment occurs between 90 days and one year of suspension, the remaining time on the one-year suspension will be stayed upon full repayment. If, after the one-year suspension, the respondent has not made full repayment, a reinstatement hearing will be required before the respondent may return to the practice of law. Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293).

Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Joseph R. Borich III is suspended for one year from the practice of law in the state of Kansas with the conditions as set forth above, effective the date of this opinion, in accordance with Supreme Court Rule 225(a)(3) (2022 Kan. S. Ct. R. at 281) for violations of KRPC 1.1, 1.2, 1.5, 1.15, 1.16, and 8.4.

IT IS FURTHER ORDERED that respondent shall comply with Supreme Court Rule 231 (2022 Kan. S. Ct. R. at 292).

IT IS FURTHER ORDERED that if after one year Borich  has not made full repayment of $46,910 paid in attorney fees to complainants, he must apply for reinstatement, and shall comply with Supreme Court Rule 232 (2022 Kan. S. Ct. R. at 293) and be required to undergo a reinstatement hearing.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.